United States Court of Appeals,

Eleventh Circuit.

No. 95-5223.

AGRO AIR ASSOCIATES, INC., Plaintiff-Appellee,

v.

HOUSTON CASUALTY COMPANY, Defendant-Appellant.

Nov. 21, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-251-CIV-NESBITT, Lenore C. Nesbitt, Judge.

Before HATCHETT, Chief Judge, COX, Circuit Judge, and MESKILL[*], Senior Circuit Judge.

HATCHETT, Chief Judge:

In this fraud case, appellant alleges errors in the district court's evidentiary rulings and appeals the court's denial of its motions for a new trial and remittitur. We affirm the judgment of the district court.

I. BACKGROUND

Appellant, Houston Casualty Company (Houston), is an insurance company based in the United States. Appellee, Agro Air Associates, Inc. (Agro), an airplane leasing company, contracted with Houston for five years, from 1988-89 to 1992-93, for hull and liability aviation insurance (the HLI policy). Hull insurance protected Agro from any accidental physical damage to, or destruction of, its aircraft, and federal regulations required that Agro maintain liability insurance to protect third parties in the event of an accident. During the final three years of the relationship, from 1990-91 through 1992-93, Agro contracted with Houston for the HLI policy and a new product, extended loss

---

[*]Honorable Thomas J. Meskill, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

of use insurance (the LOUI policy).  Under the LOUI policy, Agro could collect for its losses any time one of its aircraft was out of service for virtually any reason, with a few exclusions.  Houston customarily reinsured Agro's policies through underwriters in the London, England aviation insurance market.

Barry Fine, Agro's vice president, general counsel and general manager, testified that he informed Michael Donovan, Houston's vice president of aviation underwriting, that Agro would buy the LOUI policy only if that policy remained separate and distinct from the HLI policy.[1]  Agro considered the LOUI policy to be non-essential and did not want claims arising under that policy to affect the insurance rates of its primary HLI policy.  According to Barry Fine and Steven Platt, Agro's former insurance broker, Donovan agreed that the policies would be kept separate.  In addition, Frank Fine, Agro's president, testified that Donovan had also assured him that the HLI and LOUI policies would not be tied together.[2]

In the 1990-91 and 1991-92 policy years, Houston used separate underwriters to reinsure Agro's HLI and LOUI policies.  In the 1992-93 policy year, however, Houston used the same lead underwriter for both policies and did not inform Agro of the change.[3]  In October 1992, Agro learned

---

[1]Because we will also mention Barry Fine's father, Frank Fine, we will refer to each using his full name and to both collectively as "the Fines."

[2]Donovan testified that he did not recall conversing with the Fines or Platt about keeping the two policies separate, and that nothing was wrong with placing the policies with the same underwriters.

[3]In 1988-89, Agro made HLI policy loss claims of $2,019, and in 1989-90, HLI policy loss claims of only $727.  In 1990-91, Agro made loss claims of $3,330 on the HLI policy, and $743,463 on the LOUI policy.  In 1991-92, Agro claimed HLI policy losses of $25,122, and LOUI policy losses of $617,026.  Despite significant loss claims under the LOUI policy during the first two years of its purchase, Agro's HLI policy rates were not affected.  In the 1992-93 policy year, Agro claimed losses under the LOUI policy of approximately $845,187, as well as, apparently, $727,295 in losses under the HLI policy.

that Donovan had reinsured the two insurance policies together in the London market. In December 1992, Houston advised Agro that it was canceling the LOUI policy and informed Agro that it would not renew the HLI policy for the following year due to the lack of available reinsurance on "this class of business." Consequently, the Fines and Platt traveled to London to meet primarily with underwriters about obtaining a new policy for Agro. The lowest HLI policy rates Agro could obtain for the 1993-94 policy year represented over a 300 percent increase from its 1992-93 rates with Houston. In an effort to obtain lower rates in the 1994-95 policy year, Agro terminated Platt and hired Thomas Andersen, a Florida insurance broker, who then attempted, without success, to obtain insurance for Agro from a company in the United States. Andersen eventually placed Agro's HLI policy with London insurers at rates lower than the previous policy year, but still considerably higher than those of 1992-93.

In February 1993, Agro brought suit against Houston in the district court for the Southern District of Florida. The third amended complaint, filed in June 1994, alleged three counts of breach of contract and one count of fraud. The district court entered summary judgment for Agro on one of its contract claims, and the parties settled the two remaining contract claims in Agro's favor. Thereafter, the parties proceeded to trial on the fraud count, under which Agro asserted that (1) despite representations to the contrary, Houston commingled the HLI and LOUI policies (the commingling claim), and (2) Houston breached its representations that it would remain a loyal insurer (the loyalty claim).

At trial, Agro presented the testimony of Platt, Frank Fine and Andersen concerning their perceptions that Houston's commingling of the HLI and LOUI policies constituted the reason for the difficulties in finding an insurer after Houston declined to renew Agro's contract. Andersen also testified that he always placed HLI and LOUI policies with separate underwriters. In addition,

Agro's expert witness, John Tuff, testified that he would expect problems when one places the HLI and LOUI policies together, *i.e.,* the underwriters for the combined policies—which constitute one overall risk—would set future rates to recover their losses, without differentiating between the two policies.[4] Tuff also testified that, in his opinion, Agro sustained damages as a result of Houston's reinsuring the HLI policy with the LOUI policy and then deciding not to renew its contract with Agro. Tuff then calculated Agro's damages. He subtracted what his computations indicated Agro should have paid in premiums in the 1993-94 and 1994-95 policy years as a result of market changes and other factors, from what Agro actually paid in those years. The difference—$2,504,484.44—constituted his damage figure.

The jury returned a verdict for Agro and awarded $2,504,484.44 in damages. The verdict form, however, indicated that the jury only found for Agro on the commingling claim. The jury was "unable to agree" on the loyalty claim. The district court entered final judgment against Houston and ordered Houston to pay Agro $2,504,484.44 plus $290,068.88 in pre-judgment interest. The district court subsequently rejected Houston's post-trial motions for a new trial, judgment as a matter of law and remittitur.

## II. ISSUE

The sole issue we discuss is whether the district court erred in permitting Agro's lay witnesses to give opinion testimony.[5]

---

[4]At the time of his testimony, Tuff was an insurance broker and managing director of the special risks division of his brokerage firm, which offered services to underwriters in the London market. Tuff had thirty-seven years of experience in the aviation insurance business with constant contact with the London market, was a former underwriter in aviation insurance, and was involved in the creation of the industry's LOUI policy.

[5]Houston also contends that the district court erred in permitting Agro's expert witness to testify on the issues of causation and damages. The parties agree that our standard of review is for manifest error. *See* Evans v. Mathis Funeral Home, Inc., 996 F.2d 266, 268 (11th Cir.1993)

III. DISCUSSION

Houston contends that the district court erred in allowing three lay witnesses for Agro—Platt, Andersen and Frank Fine—to testify about their opinions as to why Agro's insurance rates and premiums increased after Houston terminated its relationship with Agro. Houston argues that because inadmissible hearsay—conversations with the London underwriters—served the only basis of the opinion testimony, the testimony should not have been admitted. Houston also asserts that the admission of the testimony was highly prejudicial because it provided the only evidence, along with the allegedly impermissible testimony of Agro's expert witness, on the issue of causation.

Agro responds that the district court properly admitted the opinion testimony because the testimony was based on the witnesses' personal observations and knowledge of, and experience in, the aviation industry. In the alternative, Agro argues that the contested testimony was merely cumulative because, even without the testimony, ample evidence existed for the jury reasonably to

---

("The district court has broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous."). Because we find no manifest error in the district court's admission of the expert testimony, we affirm the judgment of the district court on this issue.

In addition, Houston contends that the district court should have granted its motions for a new trial and remittitur based on the fact that the jury awarded excessive damages. Because we find no clear abuse of discretion, we reject these claims as well. *See* Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1447-48 (11th Cir.) ("[A] new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court."), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); Hatfield v. Anthony Forest Prods. Co., 642 F.2d 175, 178 (5th Cir. Unit A Apr.1981) (stating with regard to a denial of a motion for remittitur, "[w]here the jury's decision has been approved by the trial judge, [this court] will not disturb the award except where [the] verdict is so gross as to be contrary to right reason or to be a clear abuse of discretion").

In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc* ), this court adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

infer that Houston caused Agro's damages. Agro also asserts that Houston disregards, among other things, (1) the witnesses' testimony regarding their knowledge of the aviation insurance industry and of the circumstances in which Agro approached the London insurers; (2) the fact that Platt and the Fines believed, before ever speaking to the underwriters, that tying the LOUI and HLI policies together would adversely affect Agro; and (3) Andersen's testimony that he never combined such policies. Finally, Agro alleges that even if the court erroneously admitted the evidence, it did not affect Houston's substantial rights, and, at worst, any error was harmless.

Upon reviewing the record in this case, we conclude that the district court did not abuse its discretion in admitting the lay opinion testimony of Agro's witnesses. *See United States v. Mendez,* 117 F.3d 480, 484 (11th Cir.1997) (district court's evidentiary rulings are not subject to reversal on appeal absent a clear abuse of discretion); *United States v. Awan,* 966 F.2d 1415, 1429 (11th Cir.1992) (district court's admission of opinion evidence is reviewed for abuse of discretion). Under Federal Rule of Evidence 701, a lay witness may testify concerning "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R.Evid. 701; *see also Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 263 (5th Cir.1980). In *Lubbock,* the former Fifth Circuit held that the district court did not err in admitting a deponent's testimony that he "understood" a business relationship to exist between his business partner and a representative of Iowa Beef Processors, Inc., based on telephone conversations that he had overheard. 630 F.2d at 263-64. The court concluded that the district court properly exercised its discretion in admitting the testimony because the deponent's "inference was predicated upon conduct he observed personally, the inference is one that a normal person might draw from those observations, and it is an inference that the district court could, in its discretion, consider helpful in

the determination of a disputed fact...." *Lubbock,* 630 F.2d at 264. We find no reason to distinguish the present case.

Agro presented evidence through the testimony of Platt and the Fines that Agro had requested, prior to ever purchasing the LOUI policy, that Houston not combine the HLI and LOUI policies, and that Donovan agreed. After Houston ended its relationship with Agro, Frank Fine and Platt traveled to London, and both experienced difficulties in obtaining new insurance for Agro. Fine testified that on previous trips the underwriters had treated him as a gentleman, but on this particular trip the underwriters were rude. Fine attributed the change in treatment to the fact that Houston had combined Agro's two policies. In addition, with his experiences in the aviation insurance business and interactions with Agro and Houston as background, Platt concluded from his interactions with the London underwriters that the combining of the two policies had adversely affected Agro's insurance rating. Additionally, Platt and Andersen had extensive experience in the aviation insurance business. *See United States v. Myers,* 972 F.2d 1566, 1577 (11th Cir.1992) (finding that the police officer's opinion testimony about marks on an arrestee's back was "rationally based upon [the officer's] personal perception of [the arrestee's] back and [the officer's] nineteen years of experience on the police force"), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993). Platt was an insurance broker with seventeen years of experience in the field of aviation insurance, and Andersen had been a broker of aviation insurance for twenty years. Frank Fine had also worked in the aviation business for twelve years at the time of trial.

In short, the testimony of Agro's lay witnesses was admissible under rule 701. Because Houston had the opportunity to cross-examine the witnesses, any objection to the testimony went to the weight of the evidence, not to its admissibility. *See Myers,* 972 F.2d at 1577.

IV. CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in allowing the lay witnesses for Agro to testify about their perceptions of what caused Agro's insurance rates to increase.  Moreover, the district court did not err in (1) permitting the testimony of Agro's expert witness on the issues of causation and damages;  and (2) denying Houston's motions for a new trial and remittitur.  Accordingly, we affirm the judgment of the district court.

AFFIRMED.