A99A1664. WATERS v. STEAK & ALE OF GEORGIA, INC.
(527 SE2d 592)

BLACKBURN, Presiding Judge.

In this action based on the principles of respondeat superior, Gordon Waters appeals the trial court's grant of summary judgment to Steak & Ale of Georgia, Inc. d/b/a Bennigan's on his claims of battery, false imprisonment, and active negligence. Waters contends that issues of fact remain as to whether Bennigan's can be held responsible for injuries he received from an altercation between himself and members of Bennigan's kitchen staff. Because we find that the acts of the kitchen staff were not done within the scope of their employment, we find that respondeat superior does not apply and affirm the decision of the trial court.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Viewed in this light, the record shows that, around 12:45 a.m. on May 15, 1993, Waters was driving his girlfriend, Paige Jones, to her parents' house after spending the earlier part of the evening at a bar. At the time, Jones was highly intoxicated, and Waters contends that she was having flashbacks about a prior boyfriend who used to beat

her. In this commotion, Waters drove over the curb of the interstate, and two of his tires blew out. Waters then stopped the car, told Jones to stay seated, and crossed the street to use the telephone at Bennigan's.

Waters entered the restaurant and asked to use the phone, but before he could do so, he heard Jones, in the midst of an alleged flashback, screaming that someone was trying to hurt her and asking for help. Waters then returned to his parked car, attempted to calm Jones who was now standing on the curb, and turned to go back into Bennigan's. At that time, a number of Bennigan's kitchen staff had begun to exit the building, either to go home or to investigate the screaming. One such employee was a friend of Jones, and he immediately went to talk with her. Meanwhile, Waters encountered six to eight other employees in the parking lot who asked him what he had been doing to Jones. Three or four of the employees then hit or kicked Waters. The assault stopped when Brian Kirk, the kitchen manager, noticed what was going on and asked the employees to bring Waters inside the restaurant. Kirk told Waters, "We'll go inside and get [Jones'] parents here and get it straightened out."

Waters then tried to run to the back corner of the parking lot and into the woods, but some of the employees caught him and struck him again. In an attempt to protect Waters, Kirk instructed the employees to let Waters enter the restaurant. Waters went inside and shortly thereafter sneaked out of an emergency exit and ran into the woods behind the restaurant.

Waters later brought suit against Bennigan's, claiming that it should be held liable for the actions of its employees on his claims for battery, false imprisonment, and active negligence. The trial court subsequently granted a motion by Bennigan's for summary judgment on all claims, finding that Bennigan's employees were not acting within the scope of their employment when the incident occurred. We agree.

All three of Waters' claims, which are grounded in the doctrine of respondeat superior, are without merit if, at the time of the incident Waters complains of, Bennigan's employees were not acting within the scope of their employment.

Our Code states that every person shall be liable for torts committed by his servant by his command or in the prosecution and within the scope of his business. OCGA § 51-2-2. But, our appellate courts have followed a long line of authorities citing the general rule that in determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done

within the scope of the actual transaction of the master's business for accomplishing the ends of his employment.

(Punctuation omitted.) *Wittig v. Spa Lady, Inc.,* 182 Ga. App. 689, 690 (356 SE2d 665) (1987). See also *Lipham v. Federated Dept. Stores,* 263 Ga. 865 (440 SE2d 193) (1994) (active negligence, where an employee takes affirmative action which results in harm, exists only where employee acts within scope of his employment).

As a general rule, the determination of whether an employee was acting within the scope of his employment is a question for the jury; however, in plain and indisputable cases, the court may decide the issue as a matter of law. *New Madison South L.P. v. Gardner,* 231 Ga. App. 730, 733 (1) (231 SE2d 730) (1998).

The undisputed facts in the record before us show that Bennigan's employees were not acting within the scope of their employment when Waters was attacked. According to the affidavit of Nancy Fournier, a general manager of Bennigan's operations in Georgia and Florida, the duties of the kitchen staff were limited to activities within the kitchen, and they had no authorization to employ physical force against any party for any reason. Furthermore, the kitchen staff had no duties to maintain security on the premises, and no Bennigan's employees were authorized to detain customers or other persons for any reason. Waters provided nothing to contradict this evidence, and, as such, it is clear that the members of the kitchen staff were acting in an unauthorized manner not within the scope of their employment when they attacked Waters. Therefore, Waters' claims must fail because the elements of respondeat superior are not present in this case.

Waters' vociferous arguments that Bennigan's employees were "on the clock" at the time of the altercation have no bearing on this result. As stated earlier, "the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment." (Punctuation omitted.) *Wittig,* supra.

Moreover, we point out that, even if Waters' claim for active negligence was not otherwise faulty, as discussed above, it still lacks substantive merit. Waters contends that Kirk, the kitchen manager, committed active negligence by failing to stop the altercation in a timely manner. The evidence, however, indicates that Kirk stopped the fight shortly after it began, and there is no indication that the fight should have been foreseeable to Kirk in any way. The only evidence before us indicates that Kirk did what he could to protect Waters once the unexpected altercation began. Accordingly, there is

no support for Waters' argument that Kirk committed active negligence.

*Judgment affirmed. Eldridge, J., concurs. Barnes, J., concurs in the judgment only.*

DECIDED JANUARY 5, 2000.

*Almand & Wiggins, O. Hale Almand, Jr., Pattie J. Williams*, for appellant.
*Smith, Gambrell & Russell, David A. Handley, Dana M. Richens*, for appellee.