Reginald MIDDLEBROOKS, Frank Odom, Brenda P. Ross, Donna Scott, Otha Albritten, et al., Plaintiffs-Appellees,

v.

HILLCREST FOODS, INC., d.b.a. The Waffle House, Defendant-Appellant,

Hal Hanley, Defendant.

Reginald Middlebrooks, Sandra Middlebrooks, as next friend of Keshawna Tyler, Sandra Middlebrooks, as next friend of Dacari Middlebrooks, Frank Odom, as next friend of Carla Odom, Brenda P. Ross, as next friend of Brenda M. Ross, Leah Creque-Harris, as next friend of Kyla Harris, and Donna Scott, as next friend of Cory Scott, Plaintiffs-Appellees-Cross-Appellants,

v.

Hillcrest Foods, Inc., d.b.a. The Waffle House, Defendant-Appellant-Cross-Appellee,

Hal Hanley, Defendant.

Nos. 99-10165, 99-10734.

United States Court of Appeals,

Eleventh Circuit.

July 11, 2001.

Appeals from the United States District Court for the Northern District of Georgia. (No. 97-02411-CV-TWT), Thomas W. Thrash, Judge.

Before WILSON, COX and JOHN R. GIBSON[*], Circuit Judges.

JOHN R. GIBSON, Circuit Judge:

Hillcrest Foods, Inc., d.b.a. The Waffle House, appeals from a judgment entered against it on a claim for intentional infliction of emotional distress brought by Reginald Middlebrooks and seven other plaintiffs.[1] Hillcrest argues that it is entitled to judgment as a matter of law for numerous reasons, that the Middlebrooks group was not entitled to punitive damages, and that the district court should have ordered either a new trial or a remittitur. The Middlebrooks group cross appeals, arguing that the district court erred in instructing the jury on their race discrimination claim and that, if we remand for a new trial, they are entitled to re-try this claim. We affirm.

---

[*]Honorable John R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]The other plaintiffs are Keshawna Tyler; Sandra Middlebrooks, as next friend of Dacari Middlebrooks; Carla Odom; Brenda Ross; Kyla Harris; Cory Scott; and Otha Albritten, as next friend of Corinthia Albritten. Tyler, Odom, Ross, Harris, and Scott were minors at the time of the incident, and each was originally represented by a parent acting as next friend. At trial, the district court orally granted Hillcrest's motion to substitute them as plaintiffs in place of their parents. For ease of reference, we also refer to Dacari Middlebrooks and Corinthia Albritten, who were minors at the time of trial, as plaintiffs.

On November 22, 1996, the members of the marching band of North Atlanta High School were on the way home from an out-of-town football game. Around midnight, they stopped in Commerce, Georgia to eat. The buses parked at McDonald's, and most band members remained there. A group numbering at least twenty or twenty-five went to Waffle House along with Middlebrooks, who was an adult chaperone. Some of the students ordered and received food and drinks; some ordered, but received only their drinks or nothing; and others were not waited on. The cook, Hal Hanley, who is white, was taking some food off the grill when he turned and said that the motherfuckers who weren't buying anything were going to have to get out and that he was not going to serve any niggers.[2] Two of the plaintiffs heard both the profanity and the racial epithet, one heard the profanity, and the other five heard nothing.

Hanley then called 911 and stated that a "bus load of black people" were in Waffle House, that some were throwing things which had hit him in the head, and that, "Y'all need to send somebody down here to clear 'em all out before I get a damn knife to the son of a bitches." During the call, Hanley told a Waffle House server that people were throwing things at him, and she responded, "Oh, I didn't know that."

Hanley asked the responding officer, Sergeant Russ Myers, to clear the group from the restaurant. Myers asked them to leave, and they complied. Hanley then locked the door and turned the lights off. The band members congregated in the Waffle House parking lot and then walked back to McDonald's. Most were upset, and some were crying. When the band members returned to their buses and left, the lights were back on at Waffle House and there were customers inside the restaurant.

Hanley testified that the band group was loud and boisterous and that at least two students threw coffee creamers at him. Hanley, who has only a partial left arm, testified that at least three students called him a cripple. None of the other witnesses testified that anyone threw things at Hanley or ridiculed him. Myers testified that when he arrived at Waffle House, the band members were not unruly or loud and they appeared to be behaving very well. One of the plaintiffs testified that the group was excited and that some band members were being loud. Another testified that he poured salt on a companion's head.

Middlebrooks and seven of the band members, all of whom are African American, brought claims against Hanley and Hillcrest for racial discrimination under 42 U.S.C. § 1981 and for intentional infliction

---

[2]At trial, Hanley admitted using profanity, but denied using a racial epithet.

of emotional distress under state law. The district court dismissed Hanley before trial.[3] The jury found for Hillcrest on the discrimination claim, but found in favor of Middlebrooks and the seven band members on the intentional infliction of emotional distress claim. It awarded $5,000 in actual damages to each plaintiff and a total of $400,000 in punitive damages: $25,000 to Middlebrooks; $45,000 to Sandra Middlebrooks, as next friend of Dacari Middlebrooks; and $55,000 to each of the remaining six plaintiffs.

I.

Hillcrest argues that a variety of reasons entitle it to judgment as a matter of law. It contends that it cannot be liable for Hanley's actions because he was acting outside the scope of his employment and because there was no evidence that it negligently hired or retained him; that the plaintiffs did not prove a prima facie case of intentional infliction of emotional distress because Hanley's conduct was not extreme and outrageous, the conduct was not directed at all of the plaintiffs, and none of the plaintiffs suffered severe emotional distress; and finally, that the plaintiffs were not entitled to punitive damages because there was no evidence of conduct by Hillcrest that would support an award and because punitive damages are not available under Ga.Code Ann. § 51-12-6 (2000) where the only injury is to the peace, happiness, or feelings of a plaintiff. The Middlebrooks group argues that Hillcrest failed to preserve these arguments in its motion for judgment as a matter of law.

A motion for judgment as a matter of law "shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed.R.Civ.P. 50(a)(2). This motion can be renewed after trial under Rule 50(b), but a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion. *Litman v. Massachusetts Mut. Life Ins. Co.,* 739 F.2d 1549, 1557 (11th Cir.1984). The rule protects the non-moving party's right to cure deficiencies in the evidence before the case is submitted to the jury. *Ross v. Rhodes Furniture, Inc.,* 146 F.3d 1286, 1289 (11th Cir.1998). The moving party cannot ambush the court and opposing counsel after the verdict when the only remedy is a completely new trial. *National Indus., Inc. v. Sharon Steel Corp.,* 781 F.2d 1545, 1549 (11th Cir.1986).

At the close of the plaintiffs' evidence, Hillcrest moved for a directed verdict.[4] The court took the

---

[3]In its briefs on appeal, Hillcrest argued that this dismissal precludes its vicarious liability for Hanley's actions. At oral argument, Hillcrest's counsel conceded that the dismissal did not act as a ruling in Hillcrest's favor. In light of this concession, we need not address those of Hillcrest's arguments that are premised on the dismissal issue.

[4]Although Hillcrest's counsel used the phrase "directed verdict," he obviously intended to move for judgment as a matter of law pursuant to Rule 50(a). *See* Fed.R.Civ.P. 50 advisory committee's note to

motion under advisement and stated that it would hear from Hillcrest after it presented its evidence. At the close of all the evidence, Hillcrest again moved for judgment as a matter of law and was heard on its motion. With regard to the intentional infliction claim, Hillcrest argued primarily that the dismissal of Hanley precluded its liability for his actions. At the time, the parties were treating negligent hiring as a separate claim, and Hillcrest argued that no evidence showed it had notice of Hanley's propensity to discriminate on the basis of race. Hillcrest also argued that punitive damages were not warranted because there was no evidence that its actions showed willful misconduct, malice, fraud, wantonness, oppression, or conscious indifference.

During its motion for judgment as a matter of law at the close of all the evidence, Hillcrest did not argue that the plaintiffs failed to prove a prima facie case of intentional infliction of emotional distress or that Georgia law precludes an award of punitive damages for injuries to a plaintiff's peace, happiness, or feelings. Although Hillcrest also failed to argue that there was insufficient evidence that Hanley was acting within the scope of his employment, the Middlebrooks group mentioned the issue at that time. The Middlebrooks group also addressed the negligent hiring claim in some detail.

In its post-trial motion for judgment as a matter of law, Hillcrest raised all of the arguments it raises on appeal. The Middlebrooks group argued that Hillcrest failed to preserve most of these arguments in its motion for judgment as a matter of law made at the close of all the evidence. The district court denied Hillcrest's post-trial motion, addressing most of its arguments, but holding that Hillcrest had not preserved the argument that section 51-12-6 precludes an award of punitive damages.

We will not reverse the district court's denial of Hillcrest's Rule 50(b) motion for judgment as a matter of law on the basis of arguments that Hillcrest did not raise in support of its Rule 50(a) motion. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1077 (3d Cir.1991); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.,* 97 F.3d 1504, 1530-31 (1st Cir.1996). We conclude that the issues preserved during the hearing on Hillcrest's Rule 50(a) motion are whether there was sufficient evidence to support findings that (1) Hanley acted within the scope of his employment; (2) Hillcrest negligently hired or retained Hanley; and (3) Hillcrest's conduct was adequately egregious to support an award of punitive damages. Because Hillcrest failed to argue that there was insufficient evidence to support a prima facie case of intentional infliction of emotional distress and that Georgia statutory law precludes an award of punitive damages in a case such as

1991 amendment.

this, we will not address these claims.

We review the district court's ruling on a motion for judgment as a matter of law de novo, considering the evidence and the reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Slicker v. Jackson,* 215 F.3d 1225, 1229 (11th Cir.2000). Judgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict. *Id.*

A.

Hillcrest argues that it is entitled to judgment as a matter of law because there was no evidence that Hanley was acting within the scope of his employment or that it negligently hired or retained him. Respondeat superior and negligent hiring or retention were alternate theories under which the jury could find Hillcrest liable for Hanley's actions.

A master is liable for the torts of its servant if they are committed in the prosecution and within the scope of the master's business. Ga.Code Ann. § 51-2-2 (2000). Under Georgia law, "[a]s a general rule, the determination of whether an employee was acting within the scope of his employment is a question for the jury; however, in plain and indisputable cases, the court may decide the issue as a matter of law." *Waters v. Steak & Ale of Georgia, Inc.,* 241 Ga.App. 709, 527 S.E.2d 592, 594 (2000). This is not a case that falls within the "plain and indisputable" exception.

Hanley was cooking when he turned and used offensive language. He identified himself as a Waffle House employee when he called the police, and he told the responding officer that he was in charge. Hanley testified that he believed he was doing his job when he called the police. He also testified that he had to handle the situation because no manager was present at Waffle House that night. Based on this evidence, a reasonable jury could conclude that Hanley acted within the scope of his employment.

Under Georgia law, liability for negligent hiring or retention requires evidence that the employer knew or should have known of the employee's propensity to engage in the type of conduct that caused the plaintiff's injury. *See Alpharetta First United Methodist Church v. Stewart,* 221 Ga.App. 748, 472 S.E.2d 532, 536-37 (1996). Hanley testified that Hillcrest's district manager knew that he had been involved in an earlier altercation with a customer where a server called the police. During this altercation, the customer came over the counter, and Hanley defended himself with a knife in an attempt to cut the customer's throat. Another Hillcrest manager testified that it would not surprise him to learn that Hanley would use profanity

or make racist remarks, although he would be surprised that Hanley used this language in front of customers. A reasonable jury could conclude that Hillcrest knew or should have known of Hanley's propensity to engage in the sort of conduct that occurred in this case.

Because a reasonable jury could find that Hanley acted within the scope of his employment and that Hillcrest negligently retained him, the district court did not err in denying Hillcrest's motion for judgment as a matter of law.

### B.

Hillcrest argues that the issue of punitive damages should not have been submitted to the jury because there was no evidence that its actions showed the type of conduct Georgia law requires to support an award of punitive damages. *See* Ga.Code Ann. § 51-12-5.1(b) (Supp.1996) (requiring clear and convincing evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences").

Hillcrest's argument rests on its mistaken belief that the company itself must have taken some action that justifies an award of punitive damages. Under Georgia law, an employer is liable for punitive damages for the acts of its agent if the agent's conduct is sufficient to support an award of punitive damages. *Gasway v. Atlanta & West Point R. Co.,* 58 Ga. 216 (1877); *Sightler v. Transus, Inc.,* 208 Ga.App. 173, 430 S.E.2d 81, 81-82 (1993). Hanley's actions—including the use of profanity and a racial epithet, calling the police, and having the students removed from Waffle House—are the sort of willful misconduct that suffices to present a jury question on whether the Middlebrooks group was entitled to punitive damages. *Cf. Deavers v. Standridge,* 144 Ga.App. 673, 242 S.E.2d 331, 334 (1978) (in claim for wrongful repossession, evidence that defendants "blocked-in" plaintiff's car and told him that he could "walk his ass home" presented a jury question on whether punitive damages were justified). The district court correctly ruled that Hillcrest was not entitled to judgment as a matter of law on the punitive damages issue.

### II.

Hillcrest argues that the district court erred by failing to grant a new trial because the verdict was against the great weight of the evidence. We review the denial of a motion for a new trial for abuse of discretion. *Wood v. Morbark Indus., Inc.,* 70 F.3d 1201, 1206 (11th Cir.1995). Deference to the district court "is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." *Rosenfield v. Wellington Leisure Prods., Inc.,* 827 F.2d 1493, 1498 (11th Cir.1987).

Hillcrest offers no argument in support of its contention that the verdict was against the great weight of the evidence. In denying the motion for a new trial, the district court stated, "I don't believe that the jury verdicts were contrary to the great weight of evidence, although as I've said, there was evidence from which a jury could have returned a verdict in favor of the defendant." We see no abuse of discretion in this determination.

## III.

Hillcrest also argues that errors in the admission of evidence and in the jury instructions require a new trial. We review a district court's rulings concerning the admissibility of evidence for abuse of discretion. *Palmer v. Board of Regents,* 208 F.3d 969, 973 (11th Cir.2000). Jury instructions are subject to de novo review, and we "determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *Id.*

## A.

Hillcrest argues that firing Hanley was a subsequent remedial measure and that his termination notice should not have been admitted into evidence. Hillcrest moved to exclude evidence of Hanley's termination, and the district court ruled inadmissible any evidence of Hanley's misconduct that occurred after the incident involving the Middlebrooks group. The termination notice was redacted in accord with this ruling. Hillcrest then consented to admission of the redacted notice, precluding any argument on appeal that its admission was error.

Hillcrest also argues that evidence of Hanley's previous altercation with a customer should not have been admitted because it was irrelevant and its prejudicial effect outweighed any potential probative value. The district court held that the evidence was relevant to the issues of negligent hiring or retention and punitive damages. Because the probative value of this evidence was not outweighed by any prejudice, the district court did not abuse its discretion by ruling it admissible.

## B.

Hillcrest argues that the district court should not have instructed the jury on punitive damages for two reasons: first, there was no evidence that Hillcrest engaged in any conduct that would warrant punitive damages; and second, Georgia law precludes an award of punitive damages where the only injury is to the peace, happiness, or feelings of the plaintiff. Hillcrest failed to object to the punitive damages instruction on either ground before the jury retired to deliberate, thus waiving its right to raise these issues on appeal. *See*

*Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1329 (11th Cir.1999); Fed.R.Civ.P. 51. We therefore review for plain error and reverse only if the error is so fundamental that a miscarriage of justice has resulted. *Montgomery v. Noga,* 168 F.3d 1282, 1294 (11th Cir.1999).

Hillcrest's first contention is easily answered: because there was evidence that Hanley engaged in conduct that would support a punitive damages award, the instruction was not error.

Its second contention requires more analysis. The injury claimed by the Middlebrooks group is addressed by Georgia law, which provides:

> In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors. In such an action, punitive damages under Code Section 51-12-5 or Code Section 51-12-5.1 shall not be awarded.

Ga.Code Ann. § 51-12-6 (2000). Hillcrest argues that this statute precludes any award of punitive damages when the sole injury is to the peace, happiness, or feelings of the plaintiff. Damages awarded under this section, however, are in part punitive and in part compensatory. *Ralston v. City of Dahlonega,* 236 Ga.App. 386, 512 S.E.2d 300, 303 (1999). Thus, the purpose of the second sentence in section 51-12-6 is to prevent double recovery. *Id.* at 303 n. 4. A plaintiff who has been awarded damages prescribed by the "enlightened consciences" of the jurors is not entitled to an additional award of punitive damages.

Here, the court instructed the jurors on compensatory and punitive damages in connection with the race discrimination claim, but instructed them only on punitive damages in connection with the intentional infliction claim. The intentional infliction punitive damages instruction given by the court was submitted by Hillcrest and based on Ga.Code Ann. § 51-12-5.1 (Supp.1996). The absence of a compensatory damages instruction likely prompted the following question from the jury: "If we find for the plaintiffs solely on intentional infliction of emotional distress, may we award compensatory as well as punitive damages?" The court then instructed the jury, "Yes, you may award compensatory as well as punitive damages if you find in favor of the plaintiffs on intentional infliction of emotional distress. I will instruct you further, however, that you must find in favor of the plaintiff for compensatory damages before you can award punitive damages."

Because the court did not instruct the jury under both section 51-12-6 and section 51-12-5.1 and because the jury considered compensatory damages and punitive damages separately, there was no danger of a double recovery. *See Kesler v. Veal,* 182 Ga.App. 444, 356 S.E.2d 254, 262 (1987), *rev'd on other grounds,* 257 Ga. 677, 362 S.E.2d 214 (1987). Although it would have been more appropriate to charge the

jury in accord with section 51-12-6, we cannot say that the jury instructions caused a miscarriage of justice.

IV.

Finally, Hillcrest argues that it is entitled to a new trial or a remittitur because the damages awarded were excessive. We review the district court's ruling on this issue for a clear abuse of discretion.[5] *Agro Air Assocs., Inc. v. Houston Cas. Co.,* 128 F.3d 1452, 1455 n. 5 (11th Cir.1997). Under Georgia law, a court should not interfere with the amount of damages awarded unless they "are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." Ga.Code Ann. § 51-12-12(a) (2000). "[A]n excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony." *Moody v. Dykes,* 269 Ga. 217, 496 S.E.2d 907, 912 (1998).

During his closing argument, counsel for the Middlebrooks group suggested the jury award $25,000 in compensatory damages to each plaintiff and a total of $250,000 in punitive damages. The jury awarded $5,000 in compensatory damages to each plaintiff and a total of $400,000 in punitive damages. In denying Hillcrest's motion for remittitur, the district court stated:

> I don't believe that the amounts awarded for compensatory and punitive damages exceed the maximum reasonable range of jury verdicts, given the facts and circumstances of the case. Although the amount of the verdicts added together are high, I don't believe that the individual awards themselves are so high as to be unreasonable and excessive, although they may well be higher than what I would have awarded if I had been the finder of fact in the case.

We see no clear abuse of discretion in this ruling.

Hanley called Middlebrooks and the band members "motherfuckers" and "niggers," had the police remove them from Waffle House, and locked the door behind them. After the group returned to their buses, the restaurant reopened for other customers. Although five of the plaintiffs did not hear the offensive language, they learned of it soon afterward, either while they were still in Waffle House or when they were in the parking lot. The plaintiffs characterized their feelings after the incident as humiliation, embarrassment, disbelief, shock, shame, and disgust. The jury's award of $5,000 in compensatory damages to each plaintiff is not inconsistent with this evidence.

Under the Georgia statute that provided the basis for the punitive damages instruction submitted by Hillcrest, punitive damages are awarded to penalize, punish, or deter. Ga.Code Ann. § 51-12-5.1(c)

---

[5]Hillcrest does not argue that the punitive damages award violates its due process rights. *Cf. Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* --- U.S. ----, 121 S.Ct. 1678, --- L.Ed.2d ---- (2001) (court of appeals reviews district court's determination whether punitive damages award is constitutional de novo).

(Supp.1996). The jury's total punitive damages award of $400,000 is consistent with these purposes. The ratio between punitive and compensatory damages is some evidence of whether undue prejudice or bias infected the jury's award of punitive damages. *Time Warner Entertainment Co. v. Six Flags Over Georgia, LLC,* 245 Ga.App. 334, 537 S.E.2d 397, 416 (2000). The ten-to-one ratio in this case does not convince us that the award is tainted by prejudice or bias.

Although we, too, may have awarded less damages than the jury, the district court did not clearly abuse its discretion by denying Hillcrest's motion for remittitur.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court. Because the Middlebrooks group's argument on cross-appeal relates to an issue that would arise only on re-trial, we need not address it.

COX, Circuit Judge, dissenting.

I would concur in the court's opinion if not for its conclusion that the evidence presented at trial was sufficient to hold Hillcrest liable for the negligent hiring or retention of Hanley. The problem in this case is that the plaintiffs made one claim too many—the negligent hiring or retention claim—and the trial court erroneously submitted this claim to the jury.

As the majority correctly notes, Georgia law provides that an employer may be held liable for an employee's tortious conduct on a negligent hiring or retention theory when the employer knew or should have known of the employee's propensity to commit the conduct which injured the plaintiff. *See Alpharetta First United Methodist Church v. Stewart,* 221 Ga.App. 748, 472 S.E.2d 532, 536 (1996). Unlike the majority, however, I would conclude that the evidence presented at trial was insufficient as a matter of law to hold Hillcrest liable for Hanley's behavior.

The plaintiffs presented no evidence that Hanley had ever improperly treated restaurant customers of any race in the past. Nor was there evidence that Hanley had ever used racial slurs either in his private life or at work. Instead, the plaintiffs presented evidence that: (1) Hanley had a tendency to neglect some of his work duties; (2) Hanley had used a knife to defend himself in a violent altercation with a customer; and (3) a Hillcrest manager would not be "surprised" if Hanley used profanity, including racial slurs, in his private life. This evidence is insufficient to meet the plaintiffs' burden of demonstrating that Hillcrest knew or should have known that Hanley was likely to intentionally inflict emotional distress on the restaurant's customers.

First, the fact that Hanley neglected some of his work duties is irrelevant because the plaintiffs'

injuries stemmed from an intentional tort, not Hanley's negligent performance of his job. *See Edwards v. Robinson-Humphrey Co., Inc.*, 164 Ga.App. 876, 298 S.E.2d 600, 603 (1982) (evidence available to employer that employee had a propensity for lying irrelevant when injuries underlying plaintiff's claims were caused by violent attacks and theft). Second, the fact that Hanley used a weapon to defend himself from an assault in no way suggests that he had a propensity to inflict emotional distress on innocent customers. Finally, it is difficult to imagine that probative value should be given to the testimony of the Hillcrest manager that he would not be "surprised" if told that Hanley used profanity and racial slurs outside of work. Even if we generously interpret the testimony as signaling that Hillcrest management knew that Hanley was wont to use racial slurs in his off-hours, such information would, in my opinion, still not put a reasonable employer on notice that Hanley was likely to abuse African-American customers in the restaurant. *See Bunn-Penn v. S. Reg'l Med. Corp.,* 227 Ga.App. 291, 488 S.E.2d 747, 750 (Ga.Ct.App.1997) (evidence that male hospital employee acted inappropriately with female patients was insufficient to place hospital on notice that employee was likely to commit sexual assault of patient). I therefore conclude that the evidence presented at trial was insufficient to demonstrate that Hillcrest knew or should have known that Hanley was predisposed to intentionally inflict emotional distress on restaurant patrons.

Because the plaintiffs failed to present sufficient evidence to support the negligent hiring or retention claim, I would hold that the district court erred in denying Hillcrest's motion for judgment as a matter of law on that claim. The proper remedy would be to grant Hillcrest a new trial since the plaintiffs argued that Hillcrest was liable under both respondeat superior and negligent hiring theories and the jury's general verdict did not indicate under which theory it found Hillcrest responsible. *See Network Publ'ns, Inc. v. Ellis Graphics Corp.,* 959 F.2d 212 (11th Cir.1992).