[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13465
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-60146-CV-EGT

CHRISTOPHER JAMES PEER,

Plaintiff-Counter-
Defendant-Appellee,

RICHARD L. ROSENBAUM, ESQ.,

Plaintiff,

versus

DANIEL WARFIELD LEWIS,

Defendant-Counter-
Claimant-Appellant,

JAMES B. CHAPLIN, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 10, 2009)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Daniel Warfield Lewis appeals pro se from a final order granting judgment as a matter of law under Federal Rule of Civil Procedure 50, striking part of a compensatory damages award and reducing the jury's punitive damages award, in favor of Christopher Peer, in a case in which Lewis alleged abuse of process by Peer, one of Lewis's rival candidates for mayor of the City of Fort Lauderdale. On appeal, Lewis argues that the district court erred in partially granting Peer's Rule 50(b) motions: (1) as to lost earnings and campaign costs and contributions, because Peer failed to challenge these damage claims in his initial Rule 50(a) motion and because the district court erroneously weighed the sufficiency of the evidence and reached a finding in violation of Florida law; and (2) as to the jury's punitive damages award, because the original punitive-to-compensatory damages ratio was constitutionally sound and because this case implicates the state's significant interest in deterring "abuse of the courts for purely political manipulation, and election corruption." After thorough review, we affirm.

We review de novo a district court's ruling on a motion under Federal Rule of Civil Procedure 50, and apply the same standard as the district court. Nebula Glass Int'l, Inc. v. Reichhold, Inc., 454 F.3d 1203, 1210 (11th Cir. 2006). Under Federal Rule of Civil Procedure 50(a),

2

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). The evidence is viewed in the light most favorable to the non-moving party and all inferences are drawn in its favor. Russell v. N. Broward Hosp., 346 F.3d 1335, 1343 (11th Cir. 2003).

The relevant facts are these. The two parties involved in this suit, Lewis and Peer, were candidates in the 2006 election for mayor of the City of Fort Lauderdale. During the campaign, Lewis filed a lawsuit in state court challenging Peer's Fort Lauderdale residency. Days before the primary election, Peer filed a federal lawsuit against Lewis, alleging violations of the Fair Credit Reporting Act ("FRCA"). Lewis subsequently filed a counterclaim against Peer, alleging abuse of process. Due to Peer's repeated discovery violations, the district court imposed sanctions against Peer, which included the striking of his complaint and granting of judgment in favor of Lewis with regard to Lewis's counterclaim. The only issue that remained was the issue of damages, which was decided by a jury. After the jury awarded Lewis $790,500 in compensatory and punitive damages, the district court partially granted Peer's Rule 50(b) motions for judgment as a matter of law.

3

In so doing, it struck the jury's award of $105,000 in lost future earnings for the mayor's salary and the jury's award of $16,000 in campaign costs, leaving $12,500 in compensatory damages. It also reduced the jury's punitive damages award from $657,000 to $112,500. Lewis now appeals the district court's partial grant of Peer's Rule 50(b) motions.

First, we reject Lewis's claim that the district court erred in granting Peer's Rule 50(b) motion for judgment as a matter of law as to lost earnings and campaign costs and contributions. Under Federal Rule of Civil Procedure 50(a), "[a] motion for judgment as a matter of law 'shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.'" Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1245 (11th Cir. 2001) (quoting Fed. R. Civ. P. 50(a)(2)). "This motion can be renewed after trial under Rule 50(b), but a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." Id. "If judgment as a matter of law was due to be granted, it matters not whether the district court got the reasons for doing so right." Collado v. United Parcel Serv., 419 F.3d 1143, 1151 (11th Cir. 2005) (emphasis added). Thus, we may affirm if the result is correct even if the reason or ground relied on by the district court is wrong. See id. at 1151-52.

The Seventh Amendment prohibits a re-examination of a jury's determination of the facts. Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1330 (11th Cir. 1999). However, "if legal error is detected, the federal courts have the obligation and the power to correct the error by vacating or reversing the jury's verdict." Id.

For starters, although Lewis claims that Peer did not preserve his challenges to the jury's awards of lost mayoral salary and campaign costs, Peer did in fact preserve these challenges by making an oral motion for judgment as a matter of law on the issue of compensatory damages before the jury was charged.

On the merits, we conclude that the evidence at trial was "legally insufficient" to allow a reasonable jury to find that Peer's filing of the lawsuit caused Lewis to lose the election or campaign contributions. Fed. R. Civ. P. 50(a). As the record shows, Lewis failed to show that Peer's actions were the proximate cause of his losing the election. See Heck v. Humphrey, 512 U.S. 477, 486 n.5 (1994) (acknowledging that "[c]ognizable injury for abuse of process is limited to the harm caused by the misuse of process . . . ") (emphasis added); Valdes v. GAB Robins N. Am., Inc., 924 So.2d 862, 867 n.2 (Fla. Dist. Ct. App. 2006) (noting that "[a] cause of action for abuse of process requires" a showing of "damage to the plaintiff as a result of the defendant's action") (emphasis added). Lewis himself

5

testified that there was no way anyone could predict the outcome of the election, and he stated "I don't know if I could have won. I don't know if I might have lost. I don't know if Mr. Naugle's last minute smear stuff would have worked or not. I don't know." Furthermore, Lewis received only 30.96% of the vote, while Jim Naugle, the incumbent, received 64% of the vote. Lewis did not introduce any evidence, such as poll numbers, indicating how well his campaign was doing before Peer filed his lawsuit. Moreover, Lewis's own acknowledgment that Naugle engaged in a "last minute smear" campaign shows that factors outside of Peer's filing of the lawsuit likely contributed to the large disparity in votes received by Lewis and by Naugle. In short, even viewing the evidence in the light most favorable to Lewis, it appears that the evidence at trial was insufficient to allow a reasonable jury to find that Peer's filing of the lawsuit caused Lewis to lose the election. Nor was the evidence sufficient to show that Lewis "lost" his campaign contributions -- as Lewis himself testified, political campaigns serve numerous purposes, including educating voters, creating or strengthening the "loyal opposition," encouraging public debate, and promoting voter registration and participation. Accordingly, the district court did not err in granting Peer's motion for judgment as a matter of law as to the awards for lost mayor's salary and lost campaign contributions.

Next, we find no merit in Lewis's argument that the jury's punitive damages award should be reinstated on federal and state law grounds. To begin with, federal due process prohibits a state from imposing a "grossly excessive" punishment on a tortfeasor. TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 454 (1993). In determining whether a punitive damage award is unconstitutionally excessive, we must consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003).

The first guidepost -- the degree of reprehensibility of a defendant's misconduct -- is the most important indicator of the reasonableness of a punitive damages award. Action Marine, Inc. v. Cont'l Carbon, Inc., 481 F.3d 1302, 1318 (11th Cir. 2007) (holding that, "[o]f the three guideposts, the reprehensibility of a defendant's conduct is the most relevant"). The reprehensibility determination "must begin with the identification of the state's interest and an assessment of the strength of that interest, which are questions of law." Id. (quotations omitted).

Among the other factors to consider in determining a party's degree of reprehensibility are whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

State Farm, 538 U.S. at 419.

Also relevant here is the second factor -- the "ratio" between compensatory and punitive damages -- which requires that the punitive damages award be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." Bogle v. McClure, 332 F.3d 1347, 1362 (11th Cir. 2003) (quotations omitted). Ratios greater than single digit multipliers may be warranted where "a particularly egregious act has resulted in only a small amount of economic damages." State Farm, 538 U.S. at 425 (quotations omitted). A higher ratio may also be justified in cases where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." Id. (quotations omitted).[1]

---

[1] The third guidepost is the disparity between the punitive damages award and the "civil penalties authorized or imposed in comparable cases." BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996). The conduct alleged here is abuse of process for filing a frivolous lawsuit. Because there is no relevant civil sanction under Florida state law for filing a frivolous

Applying these factors to the present case, we conclude that the district court did not err in reducing Lewis's punitive damage award from the jury's award of $657,000 in punitive damage to $112,500. As for the most important factor -- the reprehensibility of Peer's conduct -- Lewis did not allege that Peer's actions caused him physical harm; instead, he testified that the filing of Peer's lawsuit caused him to lose business, and affected his campaign and future political pursuits. Similarly, although Peer's actions were unacceptable, they did not show a reckless disregard to the health or safety of others. Further, Lewis did not indicate that he was financially vulnerable; to the contrary, Lewis testified that he had a successful business and had worked for many years in the technology field. Lewis's counterclaim also did not allege that Peer's conduct involved repeated actions, but rather, rested on the initial filing of the Peer lawsuit and problems involving the return of service. And while the jury did find that Peer specifically intended to harm Lewis, this is the only reprehensibility factors leaning in favor of Lewis.

As for the second factor -- the ratio of the punitive damage award to the harm caused and general damages recovered -- the ratio between the original $657,000 punitive damages award and the compensatory damages award (after the district court reduced it to $12,500) stands at 53:1. So high a ratio may not be

lawsuit, the third guidepost is inconsequential to our analysis. See State Farm, 538 U.S. at 428.

9

unconstitutional as a matter of law, but Peer's conduct would have to be extraordinarily egregious to justify such a high ratio. As mentioned above, however, Peer's conduct was not particularly reprehensible, in that he did not physically harm or threaten Lewis, and his conduct involved an isolated incident.

Under these circumstances, we cannot say that the district court erred in determining that Peer's conduct was not exceedingly reprehensible and did not warrant such a high punitive damages award nor such a high ratio of punitive to compensatory damages. Accordingly, the district court's reduced punitive damages award of $133,500 -- which, when compared to the $12,500 compensatory damages award, reflects a 9:1 ratio -- complies with the federal law of punitive damages.

Turning to Lewis's state law claim, Florida law requires that the "manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct." Engle v. Liggett Group, Inc., 945 So.2d 1246, 1263 (Fla. 2006). Additionally, a punitive award must bear some reasonable relationship to the defendant's ability to pay and should not result in "economic castigation or bankruptcy of the defendant." Id. at 1263-64. There should also be a "reasonable relationship" between the punitive and compensatory damage awards. Id.

10

The district court's reduced punitive damages award complies with Florida law. Peer failed to introduce any evidence of his ability to pay, so a further reduction on this basis is not warranted. Furthermore, reducing the jury's original punitive damages award serves the purposes of Florida law, which provides that a punitive damage award should not amount to economic castigation. Under the circumstances of this case, imposing a punitive damages award that is 53 times greater than the compensatory damages award would be disproportionate to the actual harm caused by Peer's actions.

Accordingly, we affirm the district court's grant of Peer's Rule 50(b) motion.

**AFFIRMED.**