# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 4, 2012

Lyle W. Cayce
Clerk

No. 11-60833

BRAM ATES; KRISTIAN ATES,

Plaintiffs - Appellants

v.

B & D CONTRACTING, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:10-CV-272

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment in favor of Defendant-Appellee B & D Contracting, Inc. ("B & D") on Plaintiffs-Appellants' ("the Ateses'") claims that B & D was responsible for an injury to Bram Ates ("Ates") under a theory of direct liability for negligent hiring, retention, and failure to train. The Ateses argue that the district court erred by concluding: (1) that B & D was immune from suit; and (2) that there was no record evidence indicating that B & D was negligent in providing unskilled

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

employees under its personnel contract. Because we conclude that the district court correctly determined that the Ateses cannot prevail on their "direct" negligence claims, we AFFIRM without reaching the immunity question.

## I. Facts & Background

B & D is a labor personnel contractor incorporated in Louisiana. In September 2007, B & D entered into a "Contract Labor Agreement" with VT Halter Marine, Inc. ("Halter") to provide it with employees to satisfy certain labor needs. Pursuant to this contract, B & D assigned Alex Caballero ("Caballero") to work for Halter in December 2008. Caballero was assigned to work as an unskilled laborer. Masse Contracting, Inc. ("Masse"), also a labor personnel contractor like B & D, entered into a similar contract with Halter on April 28, 2008. Under that contract, Masse provided Ates to Halter as a painter.

Ates and Caballero were working aboard the towing vessel "Achievement" at Halter's Escatawpa, Mississippi shipyard. It is undisputed that both Ates and Cabellero—employed by different personnel contractors—were borrowed employees of Halter. As such, Masse and B & D had no control over the day-to-day duties or supervision of their borrowed employees. Rather, contract laborers were subject to Halter leadership, rules and regulations, and discipline.

On November 20, 2009, Caballero was allegedly cleaning weld seams on the vessel's hull with a combustible chemical solvent. According to the Ateses, Caballero failed to ventilate the area or use "explosion proof" safety lighting. As a result, the solvent ignited, causing an explosion and fire. Both Caballero and a fellow worker were killed. Five more employees were injured, including Ates. Tragically, Ates suffered severe burns which necessitated extensive skin-grafting. Masse provided Ates with compensation and medical benefits pursuant to the LHWCA.

On June 16, 2010, the Ateses filed suit asserting liability against B & D for negligent hiring, retention, and training, which the Ateses contend caused the accident. The district court granted B & D's motion for summary judgment

2

on the ground that B & D was immune from suit under the LHWCA's exclusivity provision and even if it were not, the Ateses failed to establish a duty that was breached because B & D did not owe a duty to provide Halter with trained, skilled laborers under the circumstances.

## II. Standard of Review

"We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Noble Energy Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008). Summary judgment is thus proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and punctuation omitted). "Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003).

## III. Discussion

The Ateses argue that B & D was negligent in its hiring, retention, and training of Caballero, which led to the explosion and injuries aboard the Achievement. The Ateses are careful to point out that they are not suing B & D under a theory of *respondeat superior* liability. Rather, they are suing B & D directly for its own alleged negligence. Admittedly, the LHWCA immunity question presented by this case—whether the nominal employer of an injured plaintiff's co-employee can be liable to the plaintiff for its direct negligence—is novel and has not previously been decided by a published opinion in any circuit. That said, we need not decide that question because, even if B & D *could* be held liable despite the LHWCA for its alleged "direct" negligence in its hiring, retention, and training of Caballero, the Ateses would still need some evidence of such negligence. On this point, they fail.

The Ateses argue that Caballero was unfit for the job to which he was assigned. Though the Ateses never articulate a standard outside of the "common elements of a negligence claim," general principles of negligence guide our analysis in a maritime tort case. *See, e.g.*, *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 885-86 (5th Cir. 1993) (applying admiralty tort jurisdiction despite plaintiff's argument that negligent failure to train bears no relationship to maritime activities); *Casaceli v. Martech Int'l, Inc.*, 774 F.2d 1322, 1328 (5th Cir. 1985) (concluding that a wrong that begins on land but results in harm on navigable waters may constitute a maritime tort so long as there is a significant relationship between the wrong and the maritime activity). Regardless, "the rules of negligence are the same under admiralty and Mississippi law." *Crear v. Omega Protein, Inc.*, 86 F. App'x 688 (5th Cir. 2004) (unpublished). To establish a negligence claim a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; (3) the plaintiff suffered damages; and (4) the breach proximately caused the damages. *See Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447, 1449 (5th Cir. 1989). At the summary judgment stage, the Ateses must bring forward sufficient evidence to raise a fact issue as to all elements of their claim. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The Ateses aver that B & D's personnel services contract with Halter obligated B & D to provide trained and qualified employees. That agreement required B & D to "furnish qualified employees to work on the general project(s) which may be hereinafter assigned to [B & D] by [Halter]." It is undisputed that B & D was required to provide the "training necessary to qualify [B & D's] employees." The contract, however, specified that Halter would provide "the general specifications of the project and the qualifications of [B & D's] employees needed to accomplish the work of [Halter]." B & D agreed "to furnish said qualified employees as per [Halter's] specifications."

4

Even if we assume *arguendo*[1] that B & D's assumption of contractual duties to Halter creates a tort duty to Ates, the Ateses would still have to raise a material fact issue supporting their contention that B&D breached that duty. It is undisputed that after the agreement was entered into, Halter requested an unskilled laborer. Deposition testimony reflects that unskilled laborers must simply be "physically able to go to work"; "they are not required any special training." B & D obliged and sent Caballero to Halter, an unskilled laborer who met Halter's limited work requirements. As the district court noted, by definition, an unskilled worker is one without training or skills. No one suggests Caballero was physically unable to work.

If we assume that B & D's duty is established through the agreement, its conformance with that agreement is concomitantly sufficient to negate a breach of that duty. B & D satisfied its obligation under the agreement by providing exactly what Halter asked for—an unskilled laborer. Therefore, the Ateses' claim of negligent training fails as a matter of law.

To support negligent hiring or retention claims, a plaintiff must show that the employer was on notice that the employee at issue constituted a risk of harm to those it owed a duty. *See, e.g.*, *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 610-11 (7th Cir. 2008); *Khan v. Hous. NFL Holdings LP*, 277 F. App'x 503, 504 (5th Cir. 2008) (unpublished); *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1247 (11th Cir. 2001). Because the Ateses have provided no such evidence, summary judgment on these issues was appropriate.

AFFIRMED.

---

[1] We need not and do not decide this question.