**E. Howard HUNT, Jr.,
Plaintiff-Appellant,**

v.

**Victor L. MARCHETTI, Defendant,**

**Liberty Lobby, a D.C. Corp.,
Defendant-Appellee.**

**Nos. 85–5400, 85–6078.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 19, 1987.

William A. Snyder, Jr., Ober, Kaler, Grimes & Shriver, Kevin A. Dunne, Baltimore, Md., for plaintiff-appellant.

Mark Lane, Washington, D.C., for defendant-appellee.

Before FAY and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

E. Howard Hunt, Jr., appeals three district court rulings made during the retrial of his libel suit against Liberty Lobby, Inc. The jury on retrial rendered a verdict for Liberty Lobby. We affirm.

## I. BACKGROUND

In 1978, Liberty Lobby published in its nationally distributed weekly newspaper, the Spotlight, an article which stated that the Central Intelligence Agency would attempt to implicate Hunt and others in the 1963 assassination of President John F.

Kennedy.[1] Hunt filed suit against Liberty Lobby seeking damages for libel.[2] A jury trial resulted in an award to Hunt of $650,-000 in compensatory and punitive damages. A panel of this court reversed. *Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983). On retrial, the jury rendered a verdict for Liberty Lobby. In this appeal, Hunt asserts the following errors in the conduct of the second trial: (1) that the district court improperly permitted Liberty Lobby to withdraw an oral stipulation made during the first trial that Hunt was not in Dallas on the day of the Kennedy assassination; (2) that the court improperly charged the jury that any wrongdoing by the article's author could not be imputed to Liberty Lobby; and (3) that the court improperly excluded from evidence a portion of the deposition testimony of the publisher of Spotlight.

## II. WITHDRAWAL OF THE STIPULATION

In his opening statement at the first trial, the attorney for Liberty Lobby stated, "We are not going to come forward and try to prove that Mr. Hunt was involved in the Kennedy assassination.... [T]here is no question in my mind that he was not involved. There is no question in the minds of the people at Liberty Lobby." Later, out of the presence of the jury, the attorney further stated, "I think I stipulated in opening argument, in my opinion, in our opinion, that [Hunt] probably was not there [in Dallas]. We are not going to prove that he was in Dallas." The court explained to the jury that "for the purposes of this trial, the defendants have acknowledged and conceded that [Hunt] was not in Dallas, Texas, on the date of the assassination of President Kennedy." To this statement, the attorney for Liberty Lobby responded,

"So stipulated, your Honor." Later in the trial, the Liberty Lobby attorney was able to rely upon the stipulation to prevent Hunt from introducing evidence regarding his whereabouts on the date of the assassination.

Prior to the second trial, Hunt's attorneys filed an emergency motion in limine requesting that the district court prevent Liberty Lobby's new counsel from withdrawing the stipulation regarding Hunt's whereabouts on the date of the assassination. In its response to Hunt's motion, Liberty Lobby indicated that three months earlier, in a motion for extension of time for discovery, it had informed Hunt and the court that it considered the stipulation to have been limited to the first trial. On the day the retrial was to begin, the district court denied Hunt's motion on the ground that the stipulation had been intended to apply to the first trial only.

■ In challenging the district court's ruling, Hunt acknowledges that the stipulation would not be binding in the second trial if it was intended to apply only to the first trial. *See, e.g., Continental Casualty Co. v. Canadian Universal Ins. Co.,* 605 F.2d 1340, 1346 & n. 3 (5th Cir.1979).[3] Hunt instead contests the district court's conclusion that the stipulation was limited to the first trial. In arguing that the stipulation should be binding on retrial, Hunt attempts to characterize the statements of the Liberty Lobby attorney as stipulating to the fact that Hunt was not in Dallas on the day of the Kennedy assassination. *See, e.g., Laird v. Air Carrier Engine Serv.,* 263 F.2d 948, 950–51 (5th Cir.1959). The statements, however, are more accurately viewed as a stipulation that the question of Hunt's alleged involvement in the assassination would not be contested at trial. They thus served merely to narrow

---

1. The facts of the case, including much of the text of the article, are stated in the prior panel opinion in this case. *Hunt v. Liberty Lobby,* 720 F.2d 631 (11th Cir.1983).

2. Hunt's original complaint also named as defendant Victor Marchetti, a Washington-based free-lance writer who was the author of the article in controversy. Prior to the first trial, the district court dismissed the cause of action

against Marchetti for lack of in personam jurisdiction. Hunt did not appeal that ruling.

3. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the factual issues in dispute. *Cf.* Fed.R. Civ.P. 16(c)(1). In view of this limited purpose, the district court legitimately concluded that the stipulation was not intended to apply to a subsequent retrial of the case. *Cf. Aetna Life Ins. Co. v. Barnes,* 361 F.2d 685, 690 (5th Cir.1966) (stipulations "stated in conclusory, not evidential, factual terms" have less binding effect on retrial); *United States v. State of Texas,* 680 F.2d 356, 370 (5th Cir.1982) (same). The court's ruling on retrial, in fact, was consistent with its explanation to the jury during the first trial that the stipulation was made "for the purposes of this trial."[4] Particularly in view of the fact that the same district court judge presided over both trials, we will not dispute the court's conclusion regarding the scope of the stipulation.

Furthermore, even if we were willing to second-guess the trial judge's interpretation of the stipulation, the district court nevertheless would have properly acted within its discretion in allowing Liberty Lobby to escape the constraints of the stipulation on retrial. At most, the attorney's statements had the effect on the second trial similar to that of a stipulation entered for the purposes of a pre-trial order under Rule 16 of the Federal Rules of Civil Procedure. Although these orders may be modified "only to prevent manifest injustice," Fed.R.Civ.P. 16(e), they need not be "rigidly and pointlessly adhered to at trial." 6 C. Wright and A. Miller, Federal Practice and Procedure § 1527. Rather, a district court has "wide latitude" in determining whether a party is bound by a Rule 16 pre-trial order, and decisions regarding the effect of pre-trial stipulations will not be disturbed on appeal unless the court "has clearly abused the broad discretion vested in [it] by Rule 16." *Davis v. Duplantis,* 448 F.2d

918, 921 (5th Cir.1971); *accord, Woods v. Burlington N.R.R.,* 768 F.2d 1287, 1290 (11th Cir.1985) (per curiam), *rev'd on other grounds,* —— U.S. ——, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987).

■ There is no evidence here that the district court abused its discretion either in releasing Liberty Lobby from the effect of the attorney's stipulations at the prior trial or in failing to rule on the issue until the day that the retrial began. Although the court certainly would have been better advised to resolve the matter in time to allow Hunt an opportunity to prepare his case in response to the ruling, Hunt has presented no indication that the late ruling in fact prejudiced him in any way. Hunt was aware throughout discovery prior to the retrial that Liberty Lobby intended to make Hunt's location on the day of the Kennedy assassination an issue on retrial. Moreover, at the first trial, Hunt had attempted to introduce evidence regarding his whereabouts on the day in question. When the issue was squarely presented on retrial, Hunt was able to offer witnesses to testify that he was at CIA headquarters in Washington on November 23, 1963. *See Davis v. Duplantis,* 448 F.2d at 921; *cf. Laird v. Air Carrier Engine Serv.,* 263 F.2d at 952 (withdrawal of stipulation after commencement of trial resulted in prejudice where "plaintiffs came to Court expecting to try one lawsuit and found themselves facing something quite different"). Hunt has not alleged that more time would have enabled him to better meet Liberty Lobby's evidence regarding his alleged involvement in the Kennedy assassination. Hence, we conclude that Hunt was not prejudiced by the delayed ruling.

---

4. The district court's assessment of the stipulation was not inconsistent with its characterization in the previous panel opinion in this case. Although stating that "Liberty Lobby acknowledged that Hunt was not in Dallas, Texas, on the day that President Kennedy was murdered," the opinion indicated that the effect of this acknowledgment simply was to relieve Hunt "of any burden of proving that he, in fact, did not kill the President." *Id.* The opinion explained that this concession, as well as a con-

cession by Hunt that he was a "public figure," served to simplify the trial of this case. *Id.* In no manner was the previous panel decision based upon the stipulation by Liberty Lobby that Hunt was not involved in the assassination. Because the previous panel did not expressly rule on the meaning of the stipulation, the court's description of the stipulation did not become the law of the case binding on retrial. *Cf. McGregor Boulevard Church of Christ v. Walling,* 428 F.2d 401, 404 (5th Cir.1970).

## III. JURY INSTRUCTIONS

Hunt's second claim on appeal is that the district court committed reversible error by instructing the jury that it could not impute to Liberty Lobby any wrongdoing on the part of Victor Marchetti, the author of the contested article. We reject this contention as inconsistent with the decision in the previous appeal of this case.

In the prior appeal, a panel of this court held that the district court erroneously instructed the jury that it could find Liberty Lobby vicariously liable for the actions of Marchetti. 720 F.2d at 649. The court based this holding on the applicable Florida law, which generally does not hold an employer responsible for the torts of an independent contract. *Id.* It was undisputed that Marchetti, as a freelance writer, was an independent contractor rather than an employee or agent of Liberty Lobby. *Id.*

Despite the clear holding that "it was error to include Marchetti in an instruction on vicarious liability," *id.*, Hunt now claims that the district court erred by instructing the jury that it could not impute to Liberty Lobby any wrongdoing on the part of Marchetti. He contends that the prior panel opinion held only that Liberty Lobby could not be held vicariously liable for Marchetti's actions, and not that the knowledge or acts of Marchetti could not be imputed to Liberty Lobby on any ground. He claims in particular that Marchetti's actions and information could be imputed to Liberty Lobby if Liberty Lobby employees had actual knowledge of them. By instructing that the jury could not impute to Liberty Lobby any wrongdoing by Marchetti, Hunt contends, the court precluded the jury from looking to Liberty Lobby's knowledge of Marchetti's acts and information to draw the inference that Liberty Lobby had serious doubts about the truthfulness of the story and thus printed the story with the "actual malice" necessary to support liability for libel. *See, e.g., St. Amant v. Thompson,* 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968).

Hunt's argument that the previous panel decision did not completely disallow the jury from imputing Marchetti's actions to Liberty Lobby is somewhat mystifying: to hold someone "vicariously liable" literally means to impute to them certain actions of another person. As Black's Law Dictionary explains, "imputed" "means attributed vicariously; that is, an act, fact or quality is said to be 'imputed' to a person when it is ascribed or charged to him, not because he is personally cognizant of it or responsible for it, but because another person is." The district court thus did no more than follow the express directions of the prior panel decision when it issued the instruction now challenged by Hunt.

■ Nor did the court's instructions impermissibly limit the jury's consideration of evidence relevant to the "actual malice" inquiry. The court instructed that actual malice on the part of Liberty Lobby "may be inferred from the circumstances and any direct or indirect evidence relevant to the state of mind of the publisher," including "the publisher's knowledge of the author's reputation." Moreover, the court charged that "repetition of another's words does not release one of responsibility if the repeater knows that the words are false, or inherently improbable[, or if] there are obvious reasons to doubt the veracity of the person quoted or the accuracy of his reports." The instructions thus adequately informed the jury that it could find actual malice on the part of Liberty Lobby based on the awareness by Liberty Lobby employees of Marchetti's actions and knowledge. *See St. Amant v. Thompson, supra.*

## IV. EXCLUDED TESTIMONY

Hunt's final claim is that the district court improperly excluded certain testimony of Spotlight publisher Willis A. Carto, who helped edit and read the article in controversy. At both the first trial and on retrial a deposition of Carto was read into evidence, pursuant to Fed.R.Civ.P. 32(a)(2), as part of Hunt's case in chief. In the deposition, Carto had stated that prior to accepting the story, he did not check the Liberty Lobby files on Hunt, but that he "probably did" speak with someone in the FBI, the CIA, or Congress concerning the

allegations made against Hunt. Hunt's counsel then asked: "If you had talked to somebody, how would you start? Who would you talk to?" Carto answered: "Well, I would not make it a point to talk to anybody, because I am bored with the whole assassination thing."

At the second trial, Liberty Lobby's attorney objected to the answer that Carto was "bored," contending that the question was speculative and that the answer was nonresponsive. The court sustained the objection, but on the ground that the statement was cumulative of other evidence. The court also refused to allow insertion of the word "bored" into the question that followed. The court stated, however, that Carto was in the courtroom and could be called to the stand to testify. Hunt declined to call Carto as a witness.

We need not consider whether the district court erred in excluding Carto's statements. Error in the admission or exclusion of evidence is not ground for reversal unless it affects the substantial rights of the parties. Fed.R.Evid. 103(a); Fed.R.Civ.P. 61. The party asserting the error on appeal has the burden of demonstrating that substantial rights were affected. *Perry v. State Farm Fire and Casualty Co.*, 734 F.2d 1441, 1446 (11th Cir.1984) (per curiam), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985).

In attempting to meet this burden, Hunt contends that the district court's ruling prevented him from presenting evidence that was highly relevant to the issue of malice on the part of Liberty Lobby. Certainly, an erroneous evidentiary ruling may result in substantial prejudice if it prevents or severely hinders a party's presentation of the case on the merits. *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 844 (D.C.Cir.1981) (per curiam), *cert. denied*, 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Here, however, the evidentiary ruling challenged by Hunt did not substantially prejudice the presentation of his case. Although the district court prevented Carto's statement from being read as part of his deposition, the court offered Hunt the opportunity to call Carto to the stand to ask him the particular question that was the basis for Liberty Lobby's objection. Had Carto then answered differently, Hunt could have confronted him with the statement in the deposition that he was "bored." Because Hunt did not avail himself of the opportunity to present the evidence in an alternative but equally effective manner, he can not now demonstrate that he was substantially prejudiced in presenting his case.

For the foregoing reasons, the judgment of the district court is AFFIRMED.