[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 15, 2005
THOMAS K. KAHN
CLERK

No. 04-12233
Non-Argument Calendar

_____

D.C. Docket No. 00-01297-CV-J-12-TEM

MICHAEL G. HARRIS,

Plaintiff-Appellant,

versus

CORRECTIONS CORPORATION OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 15, 2005)

Before ANDERSON, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Michael G. Harris, an African-American man proceeding pro se, appeals the district court's grant of judgment as a matter of law to Corrections Corporation of America ("CCA") in his suit alleging racial discrimination, racial harassment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, et seq. At trial, the parties stipulated that the following facts were true: (1) Harris was employed by CCA from January 6, 1997 until April 17, 2000; (2) Harris's employment with CCA was terminated by Warden David Eads on April 17, 2000; (3) Harris was on leave from work from September 19, 1999, until March 13, 2000, after he claimed to have suffered an injury during the course of his employment on September 16, 1999; (5) while on leave, Harris received workmen's compensation insurance benefits; (6) on December 27, 1999, Harris began working for the Florida Department of Corrections ("FDOC") as a correctional officer while he was on workers' compensation leave from CCA; (7) Harris was not working under any medical restrictions while employed with FDOC; (8) after Harris returned to work for CCA, Warden Eads attempted to discuss with Harris his employment with FDOC; (9) Harris refused to answer any such questions, contending that it was a "workers' comp issue;" and (10) Warden Eads notified Harris that his employment with CCA was being terminated because of his refusal to answer any questions concerning his workers' compensation

2

investigation. The jury found for CCA on Harris's claims of discrimination and harassment, but found for Harris on the retaliation claim. The court then granted CCA's motion for judgment as a matter of law.

On appeal, Harris first argues that CCA, in its post-verdict motion for judgment as a matter of law, improperly raised new grounds for relief that were not argued in its original Fed.R.Civ.P. 50(a) motion for a directed verdict.[1]

"A motion for judgment as a matter of law 'shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.'" Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1245 (11th Cir. 2001) (quoting Fed.R.Civ.P. 50(a)(2)). "This motion can be renewed after trial under Rule 50(b), but a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." Id.

Harris's argument that CCA raised additional grounds in its Rule 50(b) motion, not raised in its initial Rule 50(a) motion, has no foundation in the record. In making its Rule 50(a) motion at trial, CCA contended that Harris had failed to state a prima facie case of either race discrimination, racial harassment, or retaliation. In its Rule 50(b) motion, CCA again contended that Harris failed to

---

[1] On appeal, Harris does not reassert his claims as to the dismissal of Prison Realty Trust Inc. as a defendant and the jury's verdict for CCA regarding the merits of the discrimination and racial harassment claims. Therefore, they are deemed abandoned. See Lambrix v. Singletary, 72 F.3d 1500, 1506 n.11 (11th Cir. 1996).

state a prima facie case of retaliation.  CCA, then, properly asserted the same grounds in its renewed motion as it raised in the earlier motion.  See Middlebrooks, 256 F.3d at 1245.

Harris next argues that the district court erred in reversing the jury verdict and granting judgment as a matter of law in favor of CCA on Harris's claim of retaliation.  Harris contends that he presented evidence that showed that he had a good faith, reasonable basis for filing his EEOC charge, including (1) his testimony that he was "quite sure" that other employees received workers' compensation benefits without discrimination, (2) his testimony that he was written up for leaving the workplace without prior approval while a white shift supervisor was not written up for allegedly doing the same, and (3) his testimony that a white shift supervisor's grievance was answered in a timely fashion while his grievance was not.

"This [C]ourt reviews de novo a district court's grant of a renewed judgment as a matter of law under Federal Rule of Civil Procedure 50, applying the same standard as the district court."  Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004).  "Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Id.  This Court "should

review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party." Id. at 1192-93.

Title VII prohibits retaliation in the employment arena:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [his] protest,' so long as [he] had a reasonable good faith belief that the discrimination existed." Gupta v. Florida Board of Regents, 212 F.3d 571, 586 (11th Cir. 2000) (internal citations omitted). It is insufficient for a plaintiff to allege that his belief in this regard was honest and bona fide; the record must also indicate that the belief, though perhaps mistaken, was "objectively reasonable." Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1388 (11th Cir. 1998).

To prevail on a claim of retaliation under Title VII, a plaintiff must establish three elements by a preponderance of the evidence: (1) that the plaintiff engaged in an activity protected under Title VII, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. Gupta, 212 F.3d at 587.

"To establish a causal connection, a plaintiff must show that 'the decision-makers were aware of the protected conduct' and 'that the protected activity and the adverse employment action were not wholly unrelated.'" Id. at 590 (internal citations omitted).

Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). If accomplished, the plaintiff then bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Id.

Here, the record does not contain evidence sufficient for a reasonable jury to find that Harris's belief, that CCA had unlawfully discriminated against him during his employment, was objectively reasonable. Harris conceded in his testimony that he had no direct evidence of racial discrimination against him on the part of CCA. His evidence with respect to this issue was limited to his testimony concerning actions taken by CCA in the course of his employment, including placing him on workers' compensation, untimely responding to his grievances, and terminating his employment. Harris contends that these actions, by themselves, are evidence of racial discrimination. However, these actions do

6

not evince racial discrimination unless there is evidence of discrimination, e.g. that similarly situated white employees were treated differently. Harris did provide general testimony that he believed that CCA responded more quickly to a grievance filed by Robert Murphy, a white employee, than CCA had responded to his own grievances, and that CCA failed to discipline Scott Everett, another white employee, for allegedly committing an act for which Harris had been disciplined, i.e., leaving CCA without permission. However, because there was no evidence as to the nature of Murphy's grievance or that Everett did not have permission to leave, Harris failed to show that either Murphy or Everett were similarly situated to Harris. Harris's unsupported assertions of differential treatment based on race, without evidence showing that the comparators were similarly situated, do not support a finding by the jury that his pursuit of Title VII remedies was reasonable.

Moreover, there is no legally sufficient evidentiary basis for a reasonable jury to find that Harris established a prima facie case for retaliation. Harris testified that the decision-makers at CCA were "well aware" of his EEOC complaints. However, Harris failed to proffer any evidence in support of this claim. Rather, Jaye Smith, the assistant warden, testified that she did not know that Harris had filed an EEOC complaint until one week before trial. Because Harris did not establish by a preponderance of the evidence that the

7

decision-makers regarding his workers' compensation matters or the warden, who terminated Harris, were aware of his EEOC complaints, Harris failed to establish a causal connection between any alleged protected activity and any adverse employment action. See Gupta, 212 F.3d at 590.

Finally, even assuming arguendo that Harris's belief was objectively reasonable and the evidence established a prima facie case of retaliation, there is no legally sufficient evidentiary basis for a reasonable jury to find that the reason proffered by CCA for terminating Harris was a pretext for retaliation. CCA articulated a legitimate, non-discriminatory reason for its termination of Harris, that he refused to answer any questions concerning CCA workers' compensation investigation of him.

A plaintiff may prove pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quoting Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). Harris failed to offer any evidence to rebut this reason; rather, he conceded that he refused to discuss his employment at another correctional institution during the time he was receiving workers' compensation

benefits. Harris, to prove pretext, argues that the investigation into the alleged fraud was unnecessary and intended to harass him, and that his actions were never established as fraudulent. These arguments, however, are insufficient conclusory allegations that may not, without more, show pretext. See Mayfield, 101 F.3d at 1376. Because Harris failed to offer any evidence to rebut CCA's legitimate, non-discriminatory reason for terminating him, there is no legally sufficient evidentiary basis for a reasonable jury to find that the reason proffered by CCA was a pretext for retaliation.[2] See Pennington, 261 F.3d at 1266.

Last, Harris argues that the district court erred in not allowing CCA's alleged destruction of a tape recording of a conversation between Harris and the warden of the facility where he worked to give rise to an inference that the conversation did not concern workers' compensation fraud. Harris appears to argue that, by proving that the investigation did not concern workers' compensation fraud, he would prove that CCA's articulated reason for firing him, that he refused to answer any questions concerning CCA's workers' compensation investigation of him, is also fraudulent.

---

[2] Harris also argues that the court erred when it agreed with the defendants that his grievances with CCA did not constitute protected activity. Even accepting that the grievances were protected activity, because we conclude that Harris failed to provide a legally sufficient basis to find that CCA's reasons for terminating Harris was a pretext for retaliation, we affirm the grant of judgment as a matter of law in favor of CCA.

Error in the exclusion of evidence is not ground for reversal "unless it affects the substantial rights of the parties." Hunt v. Marchetti, 824 F.2d 916, 920 (11th Cir. 1987). "The party asserting the error on appeal has the burden of demonstrating that substantial rights were affected." Id.

Harris failed to assert or demonstrate that his substantial rights were affected by any error by the district court with respect to the alleged destruction of a tape recording. Harris concedes that the conversation concerned Harris's employment at FDOC. Harris also stipulated that he had worked at FDOC without medical restriction while on leave from CCA and receiving workers' compensation benefits. It is apparent, then, that while the words "workers' compensation fraud" may not have been used during the conversation, these questions did concern CCA's workers' compensation investigation, i.e., his employment at FDOC while receiving workers' compensation benefits. Because Harris essentially concedes that the conversation did concern potential workers' compensation fraud, any error by the district court with respect to the alleged destruction of the tape recording could not have affected Harris's substantial rights. See Hunt, 824 F.2d at 920.

Accordingly, we affirm the district court's grant of judgment as a matter of law in favor of CCA.

**AFFIRMED.**[3]

---

[3] Harris's request for permission to file supplemental brief is denied.