# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 10, 2012        Decided October 5, 2012

No. 10-3114

UNITED STATES OF AMERICA,
APPELLEE

v.

ABDUL KASSIM KANU, ALSO KNOWN AS ACE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00356-2)

*Charles J. Soschin*, appointed by the court, argued the cause for appellant. With him on the brief was *Joseph R. Conte*.

*Mark Aziz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *John P. Mannarino*, *Frederick W. Yette*, and *April E. Fearnley*, Assistant U.S. Attorneys. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Upon being retried after a mistrial in his criminal case, appellant had requested that two stipulations entered into during his first trial not be enforced. The issue on appeal is whether the district court abused its discretion in denying that request. The stipulations related solely to whether certain phone records were authentic documents and whether they would be admitted into evidence. By their terms the two stipulations referred to an admission at "this trial" but were silent about another trial on the same charges in the indictment, and consequently were ambiguous.

Although this court has previously articulated a general rule on the binding nature of stipulations, it has not addressed the issue in the context of a criminal prosecution where the Sixth Amendment constitutional right to confront witnesses is implicated. Appellant does not contend the general rule should not apply to criminal prosecutions, only that the district court erred in applying it. We join the other circuits in applying the general rule on stipulations to criminal prosecutions, and we find no abuse of discretion by the district court in this case. The district court could reasonably view the stipulations as affirmative evidentiary admissions in the prosecution of the indicted counts. Appellant fails to demonstrate manifest injustice in being held to the stipulations; he had a full opportunity to present evidence, call witnesses, and argue to the jury that the phone records were inconsistent and thus inaccurate and due little weight – an argument distinct from the phone records' authenticity, which he never challenged. Moreover, the authenticity of the records was a peripheral issue at his trial and any error in admitting the stipulations was harmless. Accordingly, we affirm.

**I.**

Appellant was indicted in 2009 on two counts, for bank theft and aiding and abetting in violation of 18 U.S.C. §§ 2113(b) & 2, and for bank theft in violation of 18 U.S.C. § 2113(c). The government presented evidence that appellant and three others participated in a staged robbery of an armored truck around midday on May 22, 2008 near 19th and M or L Streets in northwest Washington, D.C. The robbers got away with approximately $210,000, with appellant receiving $40,000. Among the witnesses was Eric Wilson, who drove the armored truck for work and was a co-confederate in the robbery. Wilson testified about appellant's involvement in planning and executing the robbery and about how Wilson's mother Regina drove appellant and Anthony Holman (a/k/a Nino) to the scene. Kyndal Green, a former classmate of Holman's who came to Washington, D.C. on May 21, 2008 to visit appellant and Siera Green, testified that appellant spent the evening prior to the robbery at a hotel with her and he brought bags of money to the hotel the next day. The government introduced phone records to corroborate Kyndal Green's testimony that she had received a phone call around noon from appellant after the robbery. Appellant did not own a cell phone at the time, but phone records indicated he used a phone belonging to one of Regina Wilson McCollum's sons (Chaz McCollum) that she had with her when she was driving appellant and Holman and following the armored truck. Kyndal Green testified that she did not know the Wilsons, suggesting that only appellant would have had reason to call her from that phone line.

Upon retrial, the government called two additional witnesses. Wilson's mother, Regina, testified she drove appellant and Holman around during the robbery itself. Siera Green, at whose apartment Kyndal Green received a phone call from appellant on the day of the robbery, testified that she

thereafter drove Kyndal to the hotel room where they found duffle bags and about 20 packs of bills wrapped with papers on which was printed "$2,000" as well as more loose money, and that after appellant and Holman arrived, the four of them were together for the rest of the day.

During the first trial, the prosecution and defense agreed to two stipulations regarding the phone records. Stipulation 1 read: "The parties agree that the attachment is a true and accurate copy of phone records for phone number (240) 286-6931 obtained in the name of Danielle McCollum for the use of Chaz McCollum and that these records may be admitted as evidence in this trial." Stipulation 2 read: "The parties agree that the attachment is a true and accurate copy of phone records for phone number (973) 409-1391 obtained in the name of Kyndal Green and that these records may be admitted as evidence in this trial." After the testimony regarding the phone records, defense counsel uncovered an inconsistency in the records – they did not match (e.g., McCollum's record shows an outbound call to Kyndal Green at 12:09 PM on May 22, but Green's phone record does not display that incoming call). During closing arguments, both the prosecutor and defense counsel discussed the inconsistencies in the phone records. The jury deadlocked, and the district court declared a mistrial.

The retrial began ten days later, on September 17, 2010. Prior to opening statements to the jury, the prosecutor alerted the district court that a dispute may arise as to whether to admit the stipulations from the first trial. The district court stated that it was inclined to admit them as "prudent and efficient." Tr. Sept. 17, 2010 at 105. Defense counsel requested they not be enforced, explaining that he had not realized when he entered the stipulations that phone conversations in those records were missing and he had not had Kyndal Green's name until approximately three days before the first trial. Upon further

consideration, the district court ruled that the stipulations would be enforced because nothing in the record indicated any type of injustice, much less manifest injustice, to appellant from being held to what he had stipulated.

A jury found appellant guilty on both counts, and the district court sentenced him to concurrent terms of 48 months' imprisonment on each count, 36 months supervised release, and $100 assessments on each count, in addition to $40,000 in restitution. Appellant appeals.

## II.

Appellant contends the district court erred in denying his request not to enforce the two stipulations at his retrial following the mistrial at the first trial. He maintains the stipulations were expressly limited to use only during his first trial, and he suffered manifest injustice as a result of their use because the records were inaccurate and he was prevented from cross-examining phone company witnesses about the inconsistencies between the phone records. This court reviews the district court's evidentiary ruling for abuse of discretion. *See United States v. Whitmore*, 359 F.3d 609, 616 (D.C. Cir. 2004); *see also Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995).

Stipulations, like admissions in the pleadings, are generally binding on the parties and the court. *Nat'l Ass'n of Life Underwriters, Inc. v. Comm'r of Internal Revenue*, 30 F.3d 1526, 1530 (D.C. Cir. 1994) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d. 224, 226 (9th Cir. 1988)). They, "like other contracts, must be interpreted in light of the circumstances under which the agreement was made." *Nat'l Audubon Soc'y, Inc. v. Watt*, 678 F.2d 299, 307 (D.C. Cir. 1982). Stipulations entered into by the parties "in the course of legal proceedings 'are not as irrevocable as other contracts,'" and the "[t]rial

court[] may, in the exercise of sound judicial discretion and in furtherance of justice, relieve parties from stipulations into which they have entered. Relief should be granted if the balance of equities favors the moving party." *Id*. at 311 n.28 (internal citations omitted). "[W]herever justice requires a court may set aside a stipulation. . . . '[I]t has inherent power, in the control of its own action, to relieve against them when made improvidently or when for any cause their enforcement would work injustice.'" *Laughlin v. Berens*, 118 F.2d 193, 196 (D.C. Cir. 1940) (citation omitted).

Other circuits have expanded on this analysis, including in more recent cases. For example, in *Wheeler v. John Deere Co.*, 935 F.2d 1090 (10th Cir. 1991), the Tenth Circuit stated that "[a] stipulation is an admission which 'cannot be disregarded or set aside at will,'" but, as a matter of the district court's discretion, "may be withdrawn whenever necessary to prevent manifest injustice," *id.* at 1097–98 (citations omitted). "District courts consequently are vested with broad discretion in determining whether to hold a party to a stipulation . . . ." *Id.* at 1098. Further, "[w]hen a stipulation is limited expressly to a single trial and phrased in terms of conclusory, rather than evidentiary, facts, district courts may on retrial free a party from the stipulation." *Id.* In much the same vein other circuits, such as the First Circuit, have stated that a party may be relieved of a stipulation if "good reason" exists and such relief does "not unfairly prejudice the opposing party or the interests of justice." *Am. Honda Motor Co., Inc. v. Richard Lundgren, Inc.*, 314 F.3d 17, 21 (1st Cir. 2002).

Additional cases illustrate the broad scope of the district court's discretion in enforcing stipulations. In *Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998), the Third Circuit observed that "[i]n general, courts encourage parties to enter into stipulations to promote judicial economy by narrowing the issues in dispute

during litigation." *Id*. at 617. Consistent with this purpose, the court instructed that "[g]enerally, a stipulation entered into prior to a trial remains binding during subsequent proceedings between the parties," noting "a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside." *Id*. (citation omitted). Although "conclusory stipulations are entitled to less deference than evidentiary ones," *id.* at 617, the "overriding factor" is "the parties' intention to limit or not limit a stipulation to only one proceeding." *Id.* So, irrespective of the nature of the stipulation (e.g., it is conclusory), "a stipulation does not continue to bind the parties if they expressly limited it to the first proceeding or if the parties intended the stipulation to apply only at the first trial." *Id.* at 616. In *Waldorf*, the court found no abuse of discretion in enforcing a stipulation that was "an open-ended concession of liability" without limitation to the "ensuing" trial. *Id*. at 617.

In *Hunt v. Marchetti*, 824 F.2d 916 (11th Cir. 1987), by contrast, a stipulation was not enforced at the second trial. This was a libel action brought by Hunt after publication of an article stating that the CIA would implicate him in the assassination of President Kennedy. Counsel for the newspaper publisher stated in opening argument to the jury that it would not attempt to prove that Hunt was in Dallas, Texas on the day of the assassination. The district court explained to the jury that "for the purposes of this trial" the defendant conceded that fact. *Id*. at 917. Defense counsel responded, "So stipulated." At trial, the defendant relied on the stipulation to prevent Hunt from introducing evidence regarding where he was on the date of the assassination. A judgment for Hunt was reversed in part on appeal (*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983)), and prior to the new trial the same district court judge ruled that the oral stipulation applied only to the first trial, given the intent of the parties. *Id.* On appeal from a judgment for the

defendant, the Eleventh Circuit found no abuse of discretion in not enforcing the stipulation, concluding the defense statements to the jury "are more accurately viewed as a stipulation that the question of Hunt's alleged involvement in the assassination would not be contested at trial. They thus served merely to narrow the factual issues in dispute," *id*. at 917–18, and were not an evidentiary stipulation. *See id.* at 918 (internal citations omitted). Even had it been "willing to second-guess the trial judge's interpretation of the stipulation," the court observed there still would not have been an abuse of discretion because defense counsel's statements had a similar effect at trial as a Rule 16(c) stipulation for a pre-trial order, which, although modifiable "'only to prevent manifest injustice,' . . . need not be 'rigidly and pointlessly adhered to at trial.'" *Id.* (quoting 6 C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1527).

The general rule on stipulations has long been applied by other circuits in criminal prosecutions as well. *See, e.g.*, *United States v. Kiser*, 948 F.2d 418, 425 (8th Cir. 1991); *cf. United States v. Gwaltney*, 790 F.2d 1378, 1386 (9th Cir. 1986), *cert. denied,* 479 U.S. 1104 (1987) (citing *United States v. Campbell*, 453 F.2d 447, 451 (10th Cir. 1972)). Indeed, *United States v. Wingate*, 128 F.3d 1157, 1160 (7th Cir. 1997), is similar to the instant case as it also involved a retrial of a criminal defendant after the jury deadlocked and a mistrial was declared. Prior to the first trial the parties in *Wingate* had entered into a written stipulation regarding the contents of an INS file and the stipulation was admitted into evidence. Upon retrial, with new counsel, the defendant objected when the prosecutor sought to admit the stipulation into evidence on the ground it denied him a right to confront witnesses under the Sixth Amendment to the Constitution. Post-trial the defendant filed an affidavit stating initial defense counsel had entered the stipulation over this objection. The Seventh Circuit upheld the district court's

decision not to release the defendant from his stipulation. In rejecting the argument that the general rule on stipulations did not apply in criminal cases involving constitutional rights, the court observed "there appears to be no support for that proposition." *Id*. Noting its own precedent applying the general rule in criminal cases, the court explained: "District courts have broad discretion to manage trials, and this includes holding defendants to their stipulations, even regarding essential elements of proof, in the absence of manifest injustice, inadvertence or a mistake as to the law or facts of the case." *Id*. at 1161 (internal citations omitted). The court also rejected the manifest injustice claim, noting the defendant did not argue he had made a mistake as to the law or the facts of the case. In responding to the defendant's argument that he inadvertently assumed the subject of the INS file would be called as a witness, and so did not seek to set aside the stipulation, the court noted that the record of the retrial clearly showed the subject would not be a witness; moreover, the government had relied on the stipulation in preparing its case. *See id.* Holding that "[t]he district court did not clearly or unmistakably abuse its discretion in admitting the stipulation," the court noted further that any error in admitting the stipulation would have been harmless, and that even were the stipulation cumulative, its effect on the trial was "negligible" because it did not preclude the defendant from attempting to show the inaccuracy of the INS file. *See id.*

The Seventh Circuit's analysis in *Wingate* is in harmony with this circuit's precedent in civil cases, and appellant does not suggest the general rule on stipulations should not apply to criminal prosecutions. So understood, we reach a similar conclusion in the instant case as that reached in *Wingate*.

**A**.

As an initial matter, we note that the government's suggestion that appellant may not appeal the district court's

enforcement of the second stipulation (Kyndal Green's phone records), which only he sought to have introduced at retrial, is not well taken. "[U]nder the invited error doctrine [] a party may not complain on appeal of errors that he himself invited or provoked the district court to commit." *United States v. Wells*, 519 U.S. 482, 488 (1997) (internal quotation marks, citation, and alteration omitted); *see also United States v. Lawrence*, 662 F.3d 551, 557 (D.C. Cir. 2011). Although appellant sought admission of Green's phone record, relying on the stipulation, he did so only after the prosecutor had successfully admitted McCollum's record. In order to demonstrate inconsistencies in the records, appellant was thus forced to seek admission of the Green record. Before the retrial commenced, appellant had voiced his objections to the district court regarding enforcement of the stipulations upon retrial.

Applying the invited error doctrine in these circumstances would create a Catch-22 — a defendant would have to choose between presenting a defense, based on the evidence of the inconsistencies in the phone records (which necessitated introducing the second record because the prosecutor had not), or hoping for reversal on appeal of the district court's denial of his non-enforcement request. This is neither the role nor the nature of induced error addressed by the doctrine. The error of which appellant complains is the enforcement of the stipulations at all, and he clearly did not induce the district court to do so.

**B.**

Regarding enforcement, the first clause of each stipulation — stating the records are true and accurate copies of phone records for the respective phone numbers — may properly be regarded as a factual, evidentiary stipulation, and not limited in time. Each is a formal, written stipulation of the parties that such evidence need not be presented through live testimony at trial. As such the stipulations would not appear to be

conclusory in nature, *see Hunt*, 824 F.2d at 918, and appellant does not suggest they are.  Each stipulation also contained in a separate clause the phrase "these records may be admitted as evidence in this trial."  This phrase is ambiguous: although, as appellant emphasizes, it is an express limitation, it is silent as to other trials, including a retrial of the same charges in the indictment.  In the exercise of the district court's discretion, *see Wingate*, 128 F.3d at 1160; *Nat'l Audubon*, 678 F.2d at 311 n.28, the ambiguity could reasonably be resolved by viewing the stipulations to reflect an agreement "co-extensive with the cause," *Vattier v. Hinde*, 32 U.S. 252, 266 (1833), of the trial on the two-count indictment filed against appellant.

Appellant's reliance on *Hunt*, 824 F.2d at 917–18, is to little avail.  Although the trial judge's explanation of the defense stipulation during opening argument to the jury contained a similar "this trial" limitation, the Eleventh Circuit viewed the oral statements to be "more accurately viewed" as not contesting (as distinct from affirmatively admitting) that Hunt was not in Dallas on the day of the assassination.  *Id.* at 918.  By contrast, the two stipulations in appellant's case were not similarly "made for purposes of this trial" but with regard to the agreed admission of evidence.  Thus, this case is more analogous to the situation in *Wheeler*, 935 F.2d at 1099,  where the Tenth Circuit explained that the defendant,"[u]nlike the defendant in *Hunt*, . . . made an affirmative, formal, factual statement that it was feasible to design a safer product and reduced the statement to writing."  "Such factual statements are judicial admissions normally binding on a party." *Id.*

Even if the "this trial" clause in the two stipulations in appellant's case would bar enforcement of them in a different case, involving different criminal charges or a civil complaint, enforcing the stipulations upon retrial of the two counts in the indictment was a permissible alternative available to the district

court, *cf. Kickapoo Tribe*, 43 F.3d at 1497 (citing Maurice Rosenberg, *Judicial Discretion of the Trial Court: Viewed from Above*, 22 Syracuse L. Rev. 635 (1971)). Not only was the "this trial" clause ambiguous, appellant's objection is not about the *authenticity* of the phone records; he does not dispute that they are, in fact, accurate copies of the records (i.e., not forgeries). Instead, he asserts that the records are inconsistent and thus inaccurate. That argument presents a question of the weight that should be given to the stipulations, a question for the jury to consider. *See, e.g.*, *Wingate*, 128 F.3d at 1161.

## C.

Appellant's claim that use of the stipulations resulted in manifest injustice is also unpersuasive. The four factors courts have viewed as relevant do not weigh in his favor. Those factors are: (1) the effect of the stipulation the party seeking to withdraw the stipulation, (2) the effect on other parties, (3) the occurrence of intervening events since the parties agreed to the stipulations, and (4) whether evidence contrary to the stipulation is substantial. *See Waldorf*, 142 F.3d at 617–18 (collecting cases).

Appellant maintains that had the government been required to have phone company employees testify to establish the authenticity of the records, he could have cross-examined them regarding the inconsistencies. But, appellant never challenged the records' authenticity and, as the government points out, "nothing prevented him from calling [phone company employees] as defense witnesses." Appellee's Br. at 20. Appellant also had the opportunity to cross-examine Kyndal Green regarding the phone records, and to present closing argument on the topic of the inconsistencies. Thus, the effect of enforcement of the stipulations on appellant was "negligible." *Wingate*, 128 F.3d at 1161. Second, because appellant raised his objection on the first day of the retrial and the district court

had indicated postponement of trial was not an option given its schedule, *see* Tr. Sept. 7, 2010 at 5–6, the government's time to secure additional witnesses was limited*. See Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 6 (1st Cir. 2007). Appellant's best hope is the third factor, in view of defense counsel's post-stipulation discovery of inconsistencies in the phone records. To the extent appellant maintains he never would have stipulated to inaccurate records, the stipulations are to the authenticity of the phone records as true and accurate copies, a fact he has never challenged. Defense counsel did not claim not to have had the phone records for comparison, only that he had not received Kyndal Green's name until just before trial. Nor did he seek to withdraw the stipulations upon his discovery but instead brought the inconsistencies to the jury's attention, indicating he recognized the distinction between accuracy and the weight a jury should accord the phone records. Finally, the purported inconsistencies did not necessarily render the records inauthentic; the records were maintained by two different companies that may record phone calls differently, *see* Gov't Exhibits 9 and 52. *Accord Am. Honda Motor Co., Inc.*, 314 F.3d at 21–22; *Waldorf*, 142 F.3d at 618.

Moreover, any error in admitting the stipulations into evidence was harmless. *See In re Sealed Case*, 352 F.3d 409, 411–12 (D.C. Cir. 2003). The authenticity of the phone records was a limited and non-central issue at appellant's trial, and appellant fails to show how the admission upon retrial had "a substantial and injurious effect or influence in determining the jury's" assessment of his culpability. *See United States v. King*, 254 F.3d 1098, 1101 (D.C. Cir. 2001) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *Kiser*, 948 F.2d at 425. At the retrial the government called two additional witnesses (Regina Wilson McCollum and Siera Green), and its evidence of appellant's guilt was overwhelming, given the co-confederates' testimony by Wilson and his mother Regina, as

bolstered by Kyndal and Siera Greens' testimony regarding, for example, appellant's arrival at the hotel room with bags filled with money wrapped in bank notes, and by the surveillance video showing Regina Wilson McCollum's vehicle following behind the armored truck. *See United States v. Moore*, 651 F.3d 30, 76 (D.C. Cir. 2011); *United States v. Palmera Pineda*, 592 F.3d 199, 200 (D.C. Cir. 2010).

Accordingly, we hold that the district court did not abuse its discretion in denying appellant's request not to enforce the stipulations on the authenticity of the phone records at his retrial, and we affirm the judgment of conviction.