In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-3291

REGINALD PITTMAN, by his guardian ROBIN M. HAMILTON,

*Plaintiff-Appellant,*

*v.*

COUNTY OF MADISON, ILLINOIS, *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:08-cv-00890-SMY-DGW — **Staci M. Yandle**, *Judge.*

———————————

ARGUED MAY 24, 2017 — DECIDED JULY 14, 2017

———————————

Before POSNER, MANION, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* On the night of December 19, 2007, Reginald Pittman, a pretrial detainee in the Madison County, Illinois, jail, hanged himself from the bars of his cell (of which he was the only occupant) with a blanket. He did not die, but he sustained brain damage that has left him in a vegetative state, cared for entirely by his mother with no government benefits. This suit, brought on his behalf, charges deliberate indifference by guards and other jail staff to the

risk of his attempting suicide, in violation of the Eighth Amendment. See *Estelle v. Gamble*, 429 U.S. 97 (1976). There are ancillary state-law claims, but they received little attention at the trial or in the parties' submissions to us; so since we're reversing and remanding the district court's decision, we'll defer consideration of those claims to a subsequent appeal, if any.

Pittman had left a suicide note in which he said that he was killing himself because the guards were "fucking" with him by not letting him see "crisis," by which he meant crisis counselors (the members of a crisis intervention team at the jail), whose duties include trying to prevent the inmates from killing or injuring themselves. Although the "National Study of Jail Suicide: 20 Years Later," conducted by the Justice Department's National Institute of Corrections in 2006 (the year before Pittman's suicide attempt), found that jail suicides had declined significantly since 1986, the study also found that suicides in jails and other detention facilities were three times as frequent as suicides by free persons. Lindsay M. Hayes, "National Study of Jail Suicide: 20 Years Later," pp. 1, 46 (National Institute of Corrections, April 2010).

Although Madison County was among the defendants named in Pittman's complaint, along with two of the county's sheriffs, the defendants who are the particular focus of the litigation are jail guards Randy Eaton and Matt Werner. In 2011 the district court granted summary judgment in favor of all the defendants, but our court reversed as to Eaton and Werner (and so remanded) on the ground that there was a genuine issue of fact as to whether they had been deliberately indifferent to the risk that Pittman would attempt suicide. *Pittman ex. rel. Hamilton v. County of Madison*, 746 F.3d

766, 777–78 (7th Cir. 2014). The case was then tried to a jury, which returned a verdict in favor of both defendants, precipitating this appeal by Pittman's guardian.

The key witness for Pittman was a man named Bradley Banovz (pronounced "Banoviz"), who occupied a cell adjacent to Pittman's when Pittman hanged himself. He testified at the trial that in the five days preceding Pittman's suicide attempt Eaton and Werner had ignored Pittman's requests to see members of the jail's crisis staff.

Some three hours after the suicide attempt a county detective obtained, in an interview room in the jail, a 25-minute interview with Banovz about the attempt, which was captured on video. Pittman's lawyer attempted to introduce the video at the trial, for while Banovz testified at the trial, that was seven years after the suicide attempt and video interview; and while he'd been lucid and articulate in the video interview he was a terrible witness at the trial, with poor recollection, an alternately hostile and flippant demeanor, and an inability to counter evidence of his criminal record harped on by defense counsel.

The trial transcript shows that defense counsel had stipulated on the second day of the trial that if the plaintiff's lawyer put Banovz on the stand, the defense would not object to the admission of the 2007 video in evidence, the parties having agreed to that before trial. In defense counsel's words, "the agreement was that if, if Bradley Banovz would testify, that, that [plaintiff counsel] could offer the video and the statement." Yet as soon as the video began, the defendants' lawyer objected, and though he called the objection "pro forma" and said he knew the video would be played (for remember the stipulation), the district judge sustained the

objection. Twice more during the trial the plaintiff's lawyer moved to admit the video, and twice more the defendant's lawyer objected. Each time the district judge sustained the objection and so the video wasn't shown after all—even though Banovz's testimony was the lynchpin of the plaintiff's case and the defendants had stipulated to the showing of the video.

The judge's ground for sustaining the objections to showing the video was that the video was hearsay because it recorded a statement that Banovz had made out of court (i.e., in the interview room at the jail in 2007). But of course the defendants' lawyer had known all this when he had agreed to allow the video to be placed in evidence. And he gave no reason for retracting his agreement; he just said that his clients had changed their minds—but so what? Stipulations are not so easily set aside. See Fed. R. Civ. P. 36(b), 16(e).

Even if the video testimony was hearsay of the sort normally excluded from a trial, the defendants had—to repeat—stipulated to its admissibility, and a stipulation is binding unless it creates "manifest injustice" (see Rule 16(e)) or was made inadvertently or on the basis of a legal or a factual error. *United States v. Wingate*, 128 F.3d 1157, 1161 (7th Cir. 1997); see also *United States v. Bell*, 980 F.2d 1095, 1097 (7th Cir. 1992); *Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir. 1982); *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721 (7th Cir. 1962); *United States v. Kanu*, 695 F.3d 74 (D.C. Cir. 2012). None of these factors is present in this case. The district judge said that she didn't think she had the authority to enforce the agreement, but "agreements to waive hearsay objections are enforceable." *United States v. Mezzanatto*, 513 U.S. 196, 202 (1995).

True, a judge can exclude evidence under Fed. R. Evid. 403 even if the parties have stipulated its admissibility, provided the harm of admitting it would substantially outweigh its probative value. See *Noel Shows, Inc. v. United States*, 721 F.2d 327, 330 (11th Cir. 1983) (per curiam). But the district court did not invoke Rule 403; nor is there any indication that playing the tape would have confused the jury, unfairly prejudiced the defendants, prolonged the trial, or otherwise impaired justice. What is more, defense counsel told us at the oral argument that he thought the video actually strengthened the defense case, and though it did not, counsel's statement took all the wind out of his sails. For he would not have objected to the playing of the video at the trial had he thought it would strengthen the defense; he knew it would have weakened the defense.

The district judge brushed aside all the reasons why the video should have been allowed in evidence, and excluded it without giving any reason why it should be excluded.

Now it might seem that because Banovz testified at trial, the video would have added nothing. But no; as Banovz acknowledged at the trial, the passage of seven years had dimmed his recollection to a considerable extent—and as we've said, his demeanor at trial was notably different from his demeanor in the video. But with his memory refreshed by a transcript of the video recording, at the trial he remembered that in the days leading up to the suicide attempt Pittman had been depressed and worried and, Banovz believed, could not "handle the solitary confinement," and Pittman had asked defendant (as he is in this lawsuit) Werner to contact crisis so that crisis would examine Pittman for "mental stability." That conversation took place on a Friday,

Banovz testified, and Werner had promised to refer Pittman to crisis on Monday—but did not do so, because he didn't work that Monday. Pittman hanged himself two days later without having been referred to crisis. Banovz also testified that defendant Eaton had told Pittman the night before he hanged himself that he could consult a crisis counselor, and that Pittman had been crying for hours that night. But Eaton hadn't followed through by referring Pittman to crisis, and that failure, if Banovz is believed, constituted deliberate indifference to a danger that Eaton had reason to know was real.

Some details mentioned in the video interview were not included in Banovz's trial testimony. On the videotape Banovz says that Werner thought Pittman was just joking about needing to see crisis; but at the trial, Werner's deposition cast doubt on whether he was able to make such a judgment. For it turned out that he'd never been told by his superiors (or at least couldn't recall having been told by them) what to do if he thought an inmate was at risk of committing suicide, what a "suicide crisis" was, or what the jail's suicide prevention policy was—if there was such a policy.

It was senseless to think that testimony by Banovz seven *years* after Pittman's suicide attempt was as or more reliable than his recorded testimony made three *hours* after the attempt. And anyway the stipulation between the parties entitled the plaintiff to play the tape at the trial. The case being close, showing the video to the jury could have resulted in a verdict for the plaintiff—and so the judge's error was not harmless. The defendants and other witnesses (including other jail personnel besides Werner and Eaton) testified that

it was the jail's policy for *any* reference to suicide by an inmate of the jail to require an immediate referral to crisis even if the reference appeared to be a joking one. Although Werner and Eaton testified that Pittman hadn't mentioned suicide or asked to be referred to crisis on the nights in question, they admitted not remembering any of the conversations they'd had with Pittman on those nights, so their testimony was worthless. And Werner admitted in a pretrial deposition that he didn't believe he'd *ever* been "given any information about the signs and symptoms of suicide in [his] training" at the jail.

Pittman's brief raises several other issues relating to how the judge conducted the trial. None of these arguments has merit.

Having for the reasons stated no assurance that Pittman's claim was fairly tried, we hereby vacate the judgment and remand the case for a retrial conducted in conformity with the analysis in this opinion.

MANION, *Circuit Judge*, dissenting.

In today's decision, this court holds that when a party seeking to admit evidence asserts the existence of an out-of-court agreement to allow that evidence, it is an abuse of discretion for district judge to exclude that evidence, even when the judge believes that evidence is inadmissible hearsay and the moving party has made no showing to the contrary. Because I disagree, I dissent. Given that today's decision for the court lacks some detail, I write separately to examine what this court has done, and to raise concerns about the burden-shifting we have imposed.

In order to reverse the judgment below, this court must first find that it was an abuse of discretion for the judge in this case to have excluded Banovz's video testimony from trial. The district court held that Banovz was available as a witness and the plaintiffs had "failed to lay a proper foundation that Banovz lacked the appropriate recollection under F.R.E. 803(5) … Nevertheless, Banovz was able to review the [videotaped] statement on the stand and testify to its contents." *Pittman v. County of Madison*, No. 3:08-cv-890-SMY-DGW, slip op. at 12 (S.D. Ill. July 28, 2016). Critically, the court today makes two factual findings. First, it finds that "the passage of seven years had dimmed [Banovz's] recollection to a considerable extent." Second, it finds that there was a stipulation for admitting the video testimony. The court does not specify why and how it makes these determinations, neither of which is supported by the record. In the process, the court shifts the burden from the party moving to admit evidence (to prove foundation for that evidence) to the party seeking to exclude the evidence (to prove lack of foundation). *See* Fed. R. Evid. 103(a)(2).

At trial, the district judge excluded the video as lacking a proper foundation. When pressed, plaintiff's counsel had no explanation for why the video ought to have been allowed other than a reference to a prior, out-of-court informal agreement with defense counsel. The court also explicitly asked what harm would come of excluding the video, and counsel stated simply that the harm was that "the proper regulation of the Court requires [admitting the videotape]" based upon the purported prior agreement of the defense counsel. Transcript of Jury Trial Proceedings Day 2 of 8 at 146:12–147:2, *Pittman v. County of Madison*, No. 3:08-cv-890-SMY (S.D. Ill. March 3, 2015), ECF No. 233. Plaintiff's counsel did not attempt to make any showing that Banovz did not adequately recall the events about which he was testifying.

Counsel also failed to make any additional offer of proof other than to rely upon what he termed a "stipulation," but which the trial court explicitly noted was not a stipulation. At best, the parties had an informal agreement relating to admission of evidence, the precise contours of which is disputed, and which was never presented to the district judge until day two of the trial. This court should not elevate that agreement to the status of a stipulation absent fact-finding below. Moreover, the so-called stipulation first arose when plaintiff's counsel was pressed for an offer of proof for the video testimony. The trial court explicitly noted that the repeated references by plaintiff's counsel to an agreement was "not an offer of proof." *Id.* at 143:16. In the hearing below relied upon by this court today, the district judge summarized what was before her: "[T]he offer of proof … as I understand it [is] some agreement that you allege existed whereby [defense counsel] agreed to allow a hearsay statement to come

into evidence without proper foundation … . I believe what you are asking the Court to do is to somehow enforce an agreement that you say existed [to admit a] statement [which] is clearly hearsay. It is clearly hearsay." *Id.* at 144:22–145:13.

Yet even supposing Banovz's videotaped statement were improperly excluded, as a court of appeals we would be obliged to make a further determination: was this improper exclusion so prejudicial as to require disturbing the judgment below? Specifically, we would be obliged to determine whether the erroneous exclusion had "a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice … [E]ven if a judge's decision is found to be erroneous, it may be deemed harmless if the record indicates the trial result would have been the same." *Lewis v. City of Chicago Police Dept.*, 590 F.3d 427, 440 (7th Cir. 2009). As noted above, plaintiff's counsel was unable to provide any reason why exclusion of the videotape would prejudice his client. Furthermore, Banovz was allowed to quietly read the pertinent parts of the transcript of his videotaped statement in the presence of the jury before testifying about the aftermath of Pittman's suicide attempt. There is no indication that this was insufficient to jog Banovz's memory, because he himself noted: "I'm a very fast reader." *Id.* at 151:22. After being provided with time to read the whole transcript, the judge verified that Banovz had read the entire thing. Banovz also stated that the transcript was accurate. During his testimony, counsel even directed Banovz back to the statement, to refresh his recollection in real time. *Id.* at 161:4.

There is no indication Banovz omitted any information included in the video: the only complaint that the plaintiff has is that Banovz was a cagey and unreliable witness in person. As plaintiff's trial counsel noted at oral argument, the entire reason he took the case was the videotape. But Banovz was still available as a witness. Over eight days of trial, the jury clearly concluded that the prison guards were credible when they claimed that they followed prison proce-dure to the letter. There is no indication that Banovz's essen-tially identical video testimony would have changed their minds. In other words, any error in excluding the video was harmless.[1]

The district judge in this case was not persuaded that the videotape was admissible under any of the hearsay excep-tions and made a reasonable decision to exclude it. This was not an abuse of discretion, and I therefore dissent.

---

[1] I also dissent to note that the remedy in this case does not settle two other, undetermined issues on appeal not addressed by the court. When this case is retried, the district court will presumably again exclude the testimony of the bank representative with the financial interest in this litigation as irrelevant, and will again retain venue in Benton, Illinois. I find no error in either of these two determinations.